STEPHEN S. BROWN et al., as Partners, etc., Appellees, v. MARY K. QUINTON, as Administratrix, etc., Appellant.

No. 17,469.

SYLLABUS BY THE COURT.

1. EVIDENCE—Conclusions—Error—Curative Evidence. The admission of testimony giving a conclusion instead of the constitutive facts is rendered harmless by the reception of other and competent evidence so showing such facts that the verdict reached would have been required thereby.

2. CONTRACT—Employment—Promise to Pay—Instructions. The petition alleged an employment and promise to pay what the services should be reasonably worth, the performance of the services, and a subsequent agreement that they were worth $1000, followed by a promise to pay that sum. The court charged that if the jury should find for the plaintiffs and should find that such agreement to pay $1000 was made the verdict should be for that sum. The testimony touching the value of the services ranged from $250 to $2000. Held, that such instruction was not erroneous.

3. WRITINGS—Interpretation—Court—Jury. Instead of advising the legal effect of certain correspondence alleged to embrace the contract of employment the court submitted such correspondence to the jury, whose construction thereof was the only one justified by the language used in such correspondence. Held, no material error.

4. CONTRACT—Express—Implied—Quantum Meruit. Each party asserted a promise as to compensation, one claiming it to embrace certain terms, the other that it contained different terms. The contention of the plaintiffs was adopted by the jury and supported by the evidence. Held, not to be a case of mutual misunderstanding whereby the minds of the parties never met, relegating plaintiffs to a recovery quantum meruit.

Brown v. Quinton.

5. STATUTE OF FRAUDS — *Promise* — *Individual Liability.* The
Missouri statute of frauds (1 Rev. Stat. of Mo. 1899, § 3418)
provides that "no action shall be brought to charge any
. . . administrator, upon any special promise to answer
for any debt or damages out of his own estate, . . . unless
the agreement . . . or some memorandum or note thereof,
shall be in writing and signed by the party to be charged
therewith, or some·other person by him thereto duly author-
ized." *Held,* that an administratrix, who, by her agent and
attorney authorized, but not in writing, employs counsel in
Missouri to assist in litigation for the estate in which litiga-
tion she is interested as administratrix, is individually liable
for the payment for the services rendered by such counsel.

Appeal from Shawnee district court.· Opinion filed
March 9, 1912.  Affirmed.

*Z. T. Hazen, R. H. Gaw,* and *E. S. Quinton,* for the
appellant.

*Edwin D. McKeever,* and *James A. Troutman,* for
·the appellees.

The opinion of the court was delivered by

WEST, J.: After it was held by this court (*Brown v.
Quinton,* 80 Kan. 44, 102 Pac. 242) that a cause of
action against the defendant personally was stated in
the petition first filed, plaintiffs amended by setting out
certain correspondence with the defendant's attorney,
and alleged that through her duly authorized agent and
attorney she employed them as attorneys for her and in
her behalf to prosecute a certain claim, agreeing to
pay so much as such services should be reasonably
worth; that the contract of employment was entered
into by such correspondence; that after the perform-
ance of such services it was verbally agreed that they
were worth $1000, which sum the defendant agreed to
pay.  Trial was had, resulting in a verdict and judg-
ment for the plaintiffs, and the defendant appeals, the
errors assigned and argued being that the court im-
properly overruled certain objections to testimony,

Brown v. Quinton.

gave and refused certain instructions, refused judgment on the special findings, and overruled the motion for a new trial.

One of the plaintiffs was permitted to testify, over objection that the question called for a conclusion, that his firm were employed, and that they were employed by or through the defendant's attorneys. It is argued that this called for the mere conclusion of the witness and not for the facts. Technically speaking, this complaint is correct, but as the testimony thus elicited was borne out by the correspondence and by other and competent evidence which would have justified the conclusion reached by the jury, the error was rendered harmless.

The defendant complains that the court refused an instruction that the plaintiffs were seeking to recover upon a written contract of employment which they had failed to prove, and therefore could not recover. This was properly refused, for the reason that the recovery was sought, as the amended petition shows, for services performed pursuant to a statement in a letter that the defendant's attorney desired to associate the plaintiffs with them in certain litigation, the further allegations being an agreement to pay what such services should be reasonably worth, a subsequent agreement that they were worth $1000, and a promise to pay that sum.

An instruction was given that if the jury should find for the plaintiffs, and should find that the defendant, through her agent, promised and agreed to pay $1000 as the amount of their fee in controversy, the verdict should be for that sum. It is urged that, even if such agreement was made, it was without consideration and unenforceable. It is said that if this instruction is correct, the plaintiffs could have simply proven the employment without the value of the services, then have shown that the parties discussed their value and agreed that it was a certain sum, and rested. If the defendant had employed plaintiffs to perform the services and

had agreed in advance to pay a given sum, no question could arise about the liability after the services were performed, and no reason is perceived why, if after they were performed the parties agreed that a certain compensation was reasonable, which compensation the defendant promised to pay, such promise would not be based on sufficient consideration and enforceable.  The testimony touching the value of the services varied from $250 to $2000, and afforded ground for concluding that the sum found by the jury to have been agreed upon and promised was reasonable.

It is contended that the defendant had no personal interest in the litigation in which the plaintiffs claim to have been employed, but the defendant appears from the record to have been administratrix of the estate of her father, which was involved in the litigation, and the jury found that the plaintiffs were employed to represent the administratrix in the case; and the evidence supports such finding.

It is complained that the court, instead of construing the contract contained in the correspondence, left it to be construed by the jury.  The only expressions in the correspondence, aside from a discussion of what was done and desired done by the plaintiffs, are:

"We are acquainted with your Mr. Dolman, and having some business in your court there, desire to associate you with us in the case. . . . We would like to have you present in the conduct and trial of the case."

If this language needs any construction, or is susceptible of more than one construction, it need only be said that the view taken by the jury was the one which the plain import of the words necessitated and which the court would have been compelled to give.  Hence no harm ensued.  (*Germania Ins. Co. v. Curran*, 8 Kan. 9, 17.)

It is also argued that there was a misunderstanding as to the compensation to be paid, in which case the law rejects the understanding of each and awards a rea-

sonable compensation. (*Turner v. Webster,* 24 Kan. 38.) · In the case cited the evidence showed an actual misunderstanding, arising out of the question as to whether a day should consist of twelve hours or twenty-four hours, so that the minds of the parties never met. Here each party asserts a promise as to compensation, one embracing certain terms, the other one with different terms; and the one contended for by the plaintiffs was the one found by the jury, and having been so found upon conflicting evidence, is controlling.

Finally it is contended that the statute of frauds precludes a recovery. Probably, if this statute applied, its effect would be obviated by the fact that the contract had been performed by the plaintiffs. (*Wonsettler v. Lee,* 40 Kan. 367, 19 Pac. 862; *Bless v. Jenkins,* 129 Mo. 647, 31 S. W. 938; *Welch v. Mann,* 193 Mo. 304, 92 S. W. 98; *Berg v. Moreau,* 199 Mo. 416, 97 S. W. 901.)   But it is asserted by the plaintiffs that the statute does not apply, as the contract did not relate to any prior or existing obligation incurred by the deceased, but to a new and independent matter.   The words of the statute pleaded (1 Rev. Stat. of Mo. 1899, § 3418) are: "No action shall be brought to charge any  .  .  . administrator, upon any special promise to answer for any debt or damages out of his own estate."   What do they mean?   If taken as they read, they plainly import a promise by an administrator to pay a debt out of his own estate.   Of course, "his own estate" can not mean his decedent's estate.   Then why should an administrator, more than another, be released from such promise unless in writing?   Since the enactment of this statute, in 1676, the English and American courts have struggled with it, such struggles resulting in different conclusions and in various comments upon the wisdom and perspicuity of the act, Judge Philips calling it a "most prolific womb of strife." (*Winters v. Cherry,* 78 Mo. 344, 346.)   Text-writers have favored us with volumes largely filled with ignorance of the

subject, although the section immediately involved (§ 4) has produced but a comparatively small amount of discussion and decision.

"Most of the personal obligations of an executor, contracted in the course of his administration, are proper charges against the estate in the final settlement of his account, but they are none the less his private debts, for which he is alone liable in his private capacity." (*Chambers v. Robbins,* 28 Conn. 544, 550.)

"It must be kept in mind that the subject matter of the contract declared upon grows out of transactions which occurred after the decedent's death. The administrator's promise was not to pay some liability his decedent had incurred, nor to fulfil some engagement he had undertaken in his lifetime." (*Holderbaugh v. Turpin,* 75 Ind. 84, 87.)

"An administrator's oral agreement to pay for legal services rendered in proceedings instituted by him in behalf of the estate is not within the statute of frauds, where the credit is extended to him personally, even though he can receive no benefit from the litigation." (*Meade v. Bowles,* 123 Mich. 696, syl. ¶ 1, 82 S. W. 658.)

"The contracts of an executor or administrator can not be regarded as in any sense the contracts of the decedent. They are necessarily the personal contracts of the executor or administrator, and he must be held personally liable therefor, when he does not stipulate for exemption from such liability." (*Bott et al. v. Barr, Administrator,* 95 Ind. 243, 244.)

"The defendant could not create a legal liability against the estate by any undertaking on his part in his capacity as administrator." (*Baker v. Fuller,* 69 Maine, 152, 155.)

In *Fehlinger v. Wood,* 134 Pa. St. 517, 19 Atl. 746, it was held that an executor and trustee who makes a promise to a debtor to the estate for unpaid purchase money for land sold by the testator in his lifetime to pay a claim against the promisee for the erection of a dwelling upon the land in consideration of his surrender of the contract to purchase the estate, and his acceptance of a lease from the executor and trustee, is

bound personally upon such promise. In *Wm. Norton v. Thomas Edwards*, 66 N. C. 367, an administrator sold land of his intestate for the payment of debts, and before the sale agreed with a creditor of the estate that if he would buy the land he should have credit on certain claims and notes over which he had control which were due from the intestate. It was held that such agreement need not be in writing. In the opinion it was said:

"It is insisted for the plaintiff that he is not bound by the agreement because of the statute which provides that an administrator shall not be charged upon a special promise to answer damages out of his own estate unless the agreement shall be in writing, signed, &c.  . . .  The answer to this objection is, that this is not an agreement to answer out of *his own estate,* but out of the estate of his *intestate*." (p. 369.)

In *Bellows v. Sowles*, 57 Vt. 164, it was held that the promise of an executor to pay $5000 to one of the testator's heirs at law in consideration that he would forbear further opposition to the probate of the will, was not within the statute. In the opinion in discussing the language of section 4 it was said:

"This phraseology clearly implies an obligation, duty, or liability on the part of the *testator's* estate, for which the executor promises to pay damages out of his *own* estate. The statute, then, was enacted to prevent executors or administrators from being fraudulently held for the debts or liabilities of the estates upon which they were called to administer.  . . .  Here the main purpose of this promise was, not to answer damages (for the testator) out of his own estate, but was entirely to subserve some purpose of the defendant. The consideration did not affect the estate, but was a matter purely personal to the defendant. Here there was no liability or obligation on the part of the estate to be answered for in damages.  . . .  Here the subject matter of the contract was connected with the estate, but in such a way that it was practically immaterial to the estate which way the question was decided. There exists, therefore, in this case, no sufficient, actual, primary liability to which this promise could be

collateral. This seems to us to be the fairest interpretation of the law. The statute was passed for the benefit of executors and administrators; but it might be said of it, as has been said of the protection afforded to an infant by the law of contracts, that 'it is a shield to protect, not a sword to destroy.' If this class of contracts was allowed to be avoided under it, instead of being a prevention of frauds, it would become a powerful instrument for fraud." (pp. 169, 171.)

It was said:

"Although the Statute of Frauds was enacted two centuries ago, and even then was little more than a reenactment of the preëxisting common law, and though cases have continually arisen under it, both in England and America, yet so confusing and at times inconsistent are the decisions, that its consideration is always attended with difficulty and embarrassment." (p. 169.)

It was pointed out that the New York revised statutes have made the provision plainer by adding "or to pay the debts of the testator or intestate out of his own estate." (p. 170.) This decision commends itself for its practical good sense. The general rule laid down by Cyc. is that "in order to come within the prohibition of the statute the promise must be to pay a debt of the decedent." (20 Cyc. 159.) The defendant relies on the statute of Missouri, and the only decision of that state bearing directly on this section which we have found is *Bambrick v. Bambrick,* 157 Mo. 423, 58 S. W. 8. There the administratrix verbally promised a claimant against the estate every dollar coming to him if he would not put in a claim against the estate, the promise being made before the promisor had been appointed, and it was held that such promise to be binding must be after appointment and in writing.

"It was her husband's debt she was agreeing to pay —not her own. . . . She was speaking of her husband's debt. Her promise was purely collateral. . . . The promise alleged was, 'after defendant qualified and within the two years.' Whereas the promise testified to was 'before she was appointed,' but in

either case it was a special collateral promise which had no validity because not in writing." (pp. 437, 438.)

"The effect of such a promise if made and valid, would have been to bind Patrick Bambrick's estate, . . . but as we have already seen, she had no authority to make such an agreement, and had she been competent to do so, her promise must have been in writing." (p. 436.)

. It appears to be the rule that a promise to be within the statute must be in a sense collateral, to become bound for something already due from or claimed against the decedent's estate; that expenses incident to administration, such as those incurred by the employment of counsel, are ordinarily such as render the administrator primarily liable individually, although in the end he may be reimbursed out of the estate in his hands. In this case the promise or contract, not being to answer for any debt due from the estate, and not being in the nature of a guaranty of any existing claim against the estate or collateral to such a debt or claim, was not within the statute.

The judgment is affirmed.