No. 42,310

In the Matter of the Estate of Charles Bertrand, Deceased. (Sto-
well and Stowell, *Appellants*, v. Harry Frandsen, Executor,
*Appellee*.)

(363 P. 2d 412)

Opinion filed July 8, 1961.

*William H. Stowell,* of Phillipsburg, argued the cause, and *Doris Dixon Stowell,* of Phillipsburg, and *Leon R. Roulier,* of Colby, were with him on the brief for the appellants.

*Arno Windscheffel,* of Smith Center, argued the cause, and *A. W. Relihan, T. D. Relihan* and *Terry E. Relihan,* all of Smith Center, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This appeal grows out of an ancillary administration of the estate of Charles Bertrand, a nonresident testate deceased.

The probate court of Thomas County, where ancillary administration proceedings were conducted, refused to discharge the ancillary nonresident executor for failure to comply with its order of final settlement which it construed as requiring such executor to pay his Kansas attorneys the fees allowed for their services.

The ancillary nonresident executor appealed the order of the probate court refusing to discharge him to the district court, and from an adverse ruling in the district court the attorneys who represented such executor in the probate court perfected an appeal to this court.

While eleven specifications of error are assigned, they resolve into two principal questions: (1) Whether appeal was properly perfected from the probate court to the district court, thus challenging the jurisdiction of the district court to hear the matter; and (2) whether the Kansas attorneys who represented the executor in the ancillary administration proceeding have a sufficient legal interest in the matter to appear in the district court and to appeal to the Supreme Court.

The facts giving rise to this controversy are as follows:

A Nebraska resident, Charles Bertrand, died testate leaving considerable property located in the state of Kansas. Harry Frandsen was appointed domiciliary executor in the state of Nebraska where he resides. Ancillary proceedings to administer the estate of Charles Bertrand located in the state of Kansas were conducted by the probate court of Thomas County, Kansas. Harry Frandsen was ap-

pointed the ancillary executor in Kansas. In these ancillary administration proceedings the records of the probate court disclose that Stowell and Stowell, attorneys of Phillipsburg, Kansas, represented the Kansas ancillary executor exclusively in the Kansas probate proceedings.

The petition for final settlement signed, verified and filed in the Thomas County probate court by the nonresident ancillary executor alleged the issuance of letters testamentary to the petitioner to execute the will of the decedent in Kansas. It further alleged the death of the decedent, the heirs of the decedent under the Kansas laws of descent and distribution, the admission of an authenticated copy of the will of the decedent to probate in the probate court of Thomas County, Kansas, the name and designation of the devisees and legatees, an itemized list of the Kansas receipts of the ancillary executor in the sum of $536,291.46 and of his disbursements of $393,594.66, and that:

"Petitioner has performed services and had expenses by reason of said estate and has employed Stowell and Stowell as his attorneys, and that they have performed services on behalf of said estate *and that allowance should be made him for his services and expenses and for his attorneys fees to be paid said attorneys in a proper sum,* in addition to allowances made by the court in the past." (Emphasis added.)

In addition the petition for final settlement alleged that the widow should have assigned to her $73,530.86, plus half of the funds received after the filing of the petition, less half of the expenses of administration not heretofore paid and other expenses ordered paid by the court, and a half interest in sixty-two quarter sections of land in Thomas and Logan Counties, and in some lots in Monument, Kansas, and a one-half interest in an undivided half interest perpetually in the minerals, including oil and gas in twenty quarter sections in Thomas, Gove and Sheridan Counties.

The petition also set out that the other properties of the estate should be assigned in trust, and that the petitioner should be appointed trustee by the probate court of Thomas County for the Kansas assets, and contained allegations of the powers, use and handling and final assignment of the trusts when the youngest grandchild of the decedent reached the age of thirty years.

The journal entry of final settlement signed by the probate judge of Thomas County on September 18, 1959, recited the appearances at the hearing on final settlement, approved the notices, and disclosed that the petition for final settlement was presented and

evidence produced thereon, and that the court after considering the evidence found the allegations of the petition to be true. The journal entry further set forth the order of the court assigning the property of the estate in accordance with the allegations contained in the petition for final settlement, construing the terms of the will and the trust therein contained, and directed the handling and disposition of the trust in accordance with the allegations made in the petition for final settlement. The court further found and ordered payment of the court costs, guardian *ad litem* fees, in addition to the allowance already made in the sum of $500, and:

"that the Executor, Harry Frandsen, has performed services in this estate which are reasonably worth, in addition to the sum of $5,000.00 allowance made to him heretofore, the sum of $5,000.00; that the Executor has employed Stowell & Stowell as his attorneys in this estate, and that the services of said attorneys are reasonably worth, in addition to the partial allowance of $15,000.00 heretofore made by the Court, the sum of $15,000.00, and that allowance should be made to said Executor for attorney fees in said amount; it being the order of the Court that the Executor be allowed the sum of $5,000.00 for his services, in addition to the $5,000.00 partial allowance previously made, *and that he be allowed the sum of $15,000.00 in addition to the $15,000.00 partial allowance previously made, for the services of his attorneys, Stowell & Stowell. That the Executor pay the said allowances out of the monies in his hands.* Upon the filing of receipts showing the payment and distribution above provided for, that the said Harry Frandsen be finally discharged as Executor in the state of Kansas and he and his surety released from further liability on his bond." (Emphasis added.)

On the 24th day of March, 1960, the ancillary executor filed receipts claiming that he had fully complied with the order of final settlement entered on the 18th day of September, 1959, but, after hearing, the probate judge refused to discharge him. The journal entry signed and filed by the probate judge on the 24th day of March, 1960, recites:

"from this and other evidence the Court finds that of the additional $15,-000.00 allowance for attorneys' fees that was received by the Executor, that he paid $7,000.00 to Stowell and Stowell and $8,000.00 to Richard E. Person and Richard A. Dier, and that *such payment of attorneys fees was not in compliance with the order of this Court and that for that reason the Court refuses to enter a discharge herein.*" (Emphasis added.)

Among the receipts presented to the probate court was an instrument entitled "Receipt" and signed by Harry Frandsen, Executor, to the following effect:

"I acknowledge receipt of $15,000 for the service of the attorneys herein in accord with the order of September 18, 1959, and that in accordance with

the written agreement of Stowell & Stowell and Richard E. Person of Holdredge and Richard A. Dier of Kearney, a copy of which is attached, I disbursed said allowance as follows: To Stowell & Stowell . . . $7,000.00. To Richard E. Person and Richard A. Dier . . . $8,000.00. I certify the signed agreement was furnished me by Stowell & Stowell shortly after August 10, 1960." (sic)

The written agreement attached thereto and signed by the attorneys reads:

"The fee to be asked for in the Charles Bertrand estate will be in the total sum of $25,000 in the state of Kansas, plus actual expenses which have been paid. In the event of contest or other litigation or anything requiring further and additional work beyond a routine closing, additional and separate fees in a reasonable sum will be allowed to Stowell & Stowell, as agreed by the parties from the fees allowed by the Court. On aggregate fees of $20,000.00, Stowell & Stowell may retain $2,000.00 and transmit the balance to Richard E. Person and Richard A. Dier. On aggregate fees in excess of $20,000.00, the additional fee will be divided equally, that is Stowell & Stowell retaining one-half and transmitting one-half. Stowell & Stowell will be reimbursed for phone calls, deed preparation and verifax copy work expenses which have been incurred. As far as the forthcoming testamentary trust in Kansas is concerned, the Nebraska attorneys, or the survivor, shall, in reimbursement of their services to the Kansas attorneys, receive one-third of the attorneys fees allowed the Kansas trustee's attorneys, after deduction of actual expenses, and the firm of Stowell & Stowell, or the survivor, to retain two-thirds in payment for their services. If the representation of the trustee or his successors in either State be terminated, by death or otherwise, by both attorneys in either state, the fee division arrangement will be terminated. Dated August 10, 1959."

On the 19th day of April, 1960, the ancillary executor served notice of appeal on the probate judge for all persons concerned from all orders entered by the probate court on the 24th day of March, 1960, in which the court refused to enter an order of final discharge and release the executor and his sureties.

Thereupon Stowell and Stowell (appellants) on the 28th day of April, 1960, filed a motion for additional time to plead in the district court of Thomas County on the appeal of the ancillary executor, and requested twenty days from the time of the hearing within which to plead. The ancillary executor (appellee) on the 18th day of May, 1960, filed a motion to strike the appellants' motion for additional time for the reason: "(a) such motion is an unauthorized pleading in this cause and (b) Stowell & Stowell have no interest in said cause, and are without authority to appear in this proceeding."

Thereafter on the 7th day of June, 1960, Stowell and Stowell filed in the district court of Thomas County a verified pleading, the

allegations of which are immaterial to this appeal, except to note it alleged that following the order of the probate court, allowing $15,000 further fees to the executor for his attorneys, the $15,000 was not paid or tendered by the executor to Stowell and Stowell.

Disposition of the foregoing motions and the action taken by the district court are disclosed by a journal entry filed the 28th day of June, 1960, which recites:

"Now, on this 23rd day of May, 1960, this matter is continued at the request of Harry Frandsen, as executor of the estate of Charles Bertrand, deceased, and with the consent of Stowell & Stowell.

"Now, on this 7th day of June, 1960, the above matter comes on for hearing. Present are Harry Frandsen, executor of the estate of Charles Bertrand, deceased, by his attorneys, Relihan, Relihan & Relihan and Arno Windscheffel of Smith Center, Kansas, and the claimants Stowell & Stowell, by William H. Stowell and Leon Roulier, their attorneys. Thereupon, the claimants Stowell & Stowell present their motion for additional time to plead. Thereupon, the executor Harry Frandsen presents his motion to strike the motion of Stowell & Stowell on the grounds that Stowell & Stowell are not proper parties to the action. Stowell & Stowell then presented an answer and asked that it be filed to show what interest and what right Stowell & Stowell had to be parties to the action. The Court examined the answer offered by Stowell & Stowell and found that it did not present a defense to the action, and that Stowell & Stowell are not proper parties to this case. The motion of the executor to strike was then sustained, and the motion of the claimants, Stowell & Stowell, for additional time to plead was denied.

"Thereupon, the executor requested an order upon the petition in which the executor asked to be discharged. The matter being fully considered, the case was remanded to the Probate Court of Thomas County, and he was directed to discharge the executor."

Appeal was duly perfected by the appellants, Stowell and Stowell, from the orders of the district court made on the 7th day of June, 1960, as set forth in the journal entry.

At the hearing before the district court on the 7th day of June, 1960, no evidence was introduced, but the transcript reflects an inquiry as to whether the court was treating the matter as a demurrer to which the trial judge answered:

"I would presume that probably would be the way the matter is treated, although it is not exactly in the nature of a demurrer. Actually, the Court is holding that Stowell & Stowell are not parties in this case, have no right to file a pleading in this case. It is not a demurrer. It is just simply that they are not parties to this action; therefore, they have no right to file a pleading."

It is clear under the provisions of G. S. 1949, 59-301, that probate courts are courts of record, and, within their respective counties, have original jurisdiction to direct and control the official acts of

executors and administrators; and that they also have and exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts.

In addition to the general jurisdiction of probate courts, they have power to compel throughout the state the performance of any duty incumbent upon any fiduciary appointed by or accounting to such courts. ( G. S. 1949, 59-302[4].)

G. S. 1949, 59-1717, provides:

"Every fiduciary shall be allowed his necessary expenses incurred in the execution of his trust, *and shall have such compensation for his services and those of his attorneys as shall be just and reasonable.* At any time during administration the fiduciary may apply to the court for an allowance upon his compensation and upon attorneys' fees." (Emphasis added.)

The final discharge of a fiduciary is controlled by the provisions of G. S. 1949, 59-1718, as follows:

"Whenever any fiduciary has paid or transferred to the persons entitled thereto all of the property of the estate, paid all taxes required to be paid by him and has filed proof thereof, *and has complied with all the orders and decrees of the court and with the provisions of law*, and has otherwise fully discharged his trust, the court shall· finally discharge him and his sureties." (Emphasis added.)

Other sections of the probate code applicable to the instant appeal are:

G. S. 1949, 59-2213, which provides:

"No judgment or decree shall be rendered in a probate proceeding without proof. *The court shall have control of its orders, judgments, and decrees for thirty days after the date of the rendition thereof.* Thereafter such orders, judgments, and decrees may be vacated or modified as provided by section 605 [*] of the code of civil procedure." (Emphasis added.)

G. S. 1949, 59-2401, which provides in pertinent part:

"An appeal to the district court may be taken from any of the following orders, judgments, decrees, and decisions of the probate court: . . . (21) A final decision of any matter arising under the jurisdiction of the probate court."

G. S. 1949, 59-2404, which provides in pertinent part:

"*Such appeal may be taken by any person aggrieved within thirty days after the making of such order, judgment, decree, or decision: . . .*" (Emphasis added.)

While the provisions of 59-2401, *supra,* do not specifically list an order making an allowance of compensation to the executor for the services of his attorneys as an appealable order, the allowance for attorneys' fees here in question was made a part of the order of

final settlement. As such it was a final decision which should have been appealed to the district court by the aggrieved party within thirty days under the provisions of 59-2404, *supra*. The ancillary executor herein perfected no appeal to the district court from the order of final settlement. He appealed only from the order of the probate court refusing to discharge him for failure to comply with its order of final settlement. This was more than thirty days after the order of final settlement had been entered.

It is the appellants' contention that the ancillary executor is actually attempting to appeal from the order of the probate court requiring him to pay his Kansas attorneys the compensation allowed such executor for the services of his attorneys, although at the time of the appeal the order was more than thirty days old. It is therefore suggested the district court did not have jurisdiction to entertain the ancillary executor's appeal. This point is well taken.

It is a fundamental rule that where a court has jurisdiction of the parties to an action and of the subject matter thereof, and renders a judgment within its competency, the judgment is final and conclusive unless corrected or modified on appeal, or by such other method as may be prescribed by statute, and it cannot be attacked collaterally otherwise.

Where due notice of a proposed final settlement of an estate has been given, the probate court has jurisdiction to make the settlement, apportion the residue of the estate among those entitled to share it, and to order distribution. Such order is binding and conclusive upon all having notice of the proceeding, unless vacated or set aside upon the grounds or by the methods prescribed by statute. (*In re Estate of Burling*, 179 Kan. 687, 298 P. 2d 290, and numerous authorities cited therein.)

It was said in the opinion of the case just cited:

"After the probate court lost control of its judgment of final settlement, the only order it could further make was to finally discharge the executor upon his filing receipts for sums of money ordered disbursed by the journal entry of final settlement . . . The fact that the executor delayed in filing such receipts until April 27, 1954, did not prevent the judgment of final settlement from becoming final and absolute. Thereafter, the probate court had control of the executor for one purpose only, *i. e.*, to finally discharge him when he filed his receipts . . ." (p. 695.)

The general powers of the probate court over fiduciaries under 59-301, 59-302 and 59-1718, *supra*, were before the court in *In re*

*Estate of Williams,* 160 Kan. 220, 160 P. 2d 260, where the court held:

"Under the present probate code probate courts have general authority to approve or disapprove final receipts filed by fiduciaries and may exercise judicial discretion as to whether such fiduciaries shall be discharged." (Syl. ¶ 1.)

The appeal by the ancillary executor to the district court within thirty days from the order of the probate court refusing to discharge him, requires consideration of the second holding of the court in the case of *In re Estate of Williams,* supra, which reads:

"On appeal from an order of the probate court denying a motion to discharge an administrator, the district court also may exercise the same judicial discretion and its judgment will not be reversed in the absence of a clear showing of an abuse of such discretion." (Syl. ¶ 2.)

It must be observed the district court did not consider the merits of the appeal taken from the probate court because *it heard no evidence.* By reason thereof it did not exercise judicial discretion in reversing the probate court by ordering the discharge of the ancillary executor. It decided the appeal solely on the ground that Stowell and Stowell, the Kansas attorneys for the ancillary executor in the probate court, were not parties to the action and had no interest therein. The district court, in effect, treated the appeal as having been taken from the order of final settlement, and applied its own interpretation.

Do the appellants, as attorneys for the ancillary executor in Kansas, on the facts presented by the record in this case have a sufficient legal interest in the matter to appear in the district court? An answer to this question will also determine whether the appellants have a right to perfect an appeal to the Supreme Court in this controversy.

The appellee argues that the appellants were attorneys for the executor to assist him in the proper administration of the estate, and are furthering litigation adverse to the estate and to the executor. He argues that final settlement has been made in the estate; that the executor has disbursed the estate funds in his hands and now finds himself and the estate involved in litigation which he had no reason to anticipate or expect, and particularly litigation with attorneys who were employed to aid him in the proper administration of the estate. He argues the appellants are not aggrieved by reason of the order discharging the executor; that they have no claim against the Bertrand estate, or against the executor

in his representative capacity, and the order of discharge does not deprive the appellants of any right of action, nor does it affect them in any manner.

The appellee contends the appellants are not real parties in interest and relies upon the case of *In re Estate of Johnson,* (Syl. ¶ 3), 164 Kan. 45, 187 P. 2d 376, for the proposition that one who is not entitled to object to an order of final settlement of an estate in probate court is not entitled to appeal from such order to the district court.

It may be conceded the appellants did not have a right in the probate court to object to the order of final settlement made regarding the estate in question, but the probate court entered an order of final settlement in accordance with the executor's petition and it became final without an appeal having been perfected therefrom. *It was the executor who appealed* to the district court on the matter in controversy and not the appellants.

In our opinion the appellants had a legal duty to appear in the district court as attorneys to defend the order of the probate court which had become final. Their interest by reason of the order of final settlement in the estate had become substantial, and as officers of the court in which they practiced, they had the right to appear.

It is essential to the disposition of this case that consideration be given to *In re Estate of Eyth,* 157 Kan. 268, 139 P. 2d 378, and the cases of *Brown v. Quinton,* 80 Kan. 44, 102 Pac. 242, and *Brown v. Quinton,* 86 Kan. 658, 122 Pac. 116, upon which reliance is placed in the *Eyth* case.

In the first appearance of the *Brown* case an appeal was perfected to this court from an order of the district court dismissing a petition on the ground it did not state a cause of action. The second appeal was after the case had been tried. There an action to recover for legal services rendered in the courts of Missouri was filed in the *district court* of Shawnee County, Kansas. Attorneys employed by an administratrix to prosecute a certain claim in the courts of Buchanan County, Missouri, brought the action. In the title of the petition the plaintiffs described the defendant as "Mary K. Quinton, Administratrix of the estate of L. B. Kendall, deceased." In the first appearance of the case it was held the attorneys had no claim they could enforce directly against the estate, but that the administratrix was individually liable for such services, and upon settlement of her accounts was entitled to reimbursement out of the

estate for attorneys' fees necessarily paid out as expenses of administration. The court further held, since the claim set up in the petition was personal and not an official liability of the defendant, reference to her official character should be regarded as descriptive of the person and could be rejected as surplusage, and the petition held to state a cause of action against the defendant as an individual.

The second appearance of the *Brown* case upheld the force of the prior decision. It held, among other things, that compensation for services of the attorney coud be personally recovered from the individual who had contracted for and received the benefit of such services while acting as administratrix of an estate.

In the *Eyth* case appeal was taken to the district court from an order and judgment of the probate court allowing the account of an administrator and directing an allowance for the expense of the administrator. In addition to an allowance for the administrator the district court entered judgment for his attorney in the sum of $200. On appeal to the Supreme Court it was held error to render such judgment in favor of the attorney. It was said the language of G. S. 1941 Supp., 59-1717 (presently appearing as G. S. 1949, 59-1717) was similar to the statute considered in the *Brown* cases, and the court held that an attorney employed by an administrator cannot enforce a claim for services directly against an estate, although the administrator is individually liable therefor and may be reimbursed out of the estate for attorneys' fees necessarily paid out as expenses of administration.

The factual approach to the question in the foregoing cases did not present the difficulties which are now made apparent by an unqualified application of the rule. By the provisions of G. S. 1949, 59-1301, the "appropriate and necessary costs and expenses of administration" are designated as preferred claims of the *second class* where the assets of an estate are insufficient to pay in full all demands allowed against it. Such costs and expenses are in the same class as "the reasonable sums for the appropriate and necessary expenses of the last sickness of decedent, including wages of servants." Under the provisions of 59-1717, *supra*, the allowance of compensation to an executor for the services of his attorneys is an expense of administration. It is clear expenses of administration are not debts of a decedent, and are not subject to the limita-

tion of the lien thereof, and payment may be decreed after the expiration of the lien for debts.

The provisions of 59-1717, *supra*, should be so construed that the fiduciary may safely procure the aid of legal advisers, and thus bind the estate for the payment of what may be found reasonable. The law contemplates that the representative *will himself PAY the value of such services*, and be reimbursed by receiving credit for the amount paid in settlement of his account. (2 Bartlett, Kansas Probate Law and Practice, § 1001, pp. 506 and 507.)

The appellants request the rule in the *Brown* and *Eyth* cases be critically re-examined concerning the construction of 59-1717, *supra*. They suggest the adoption of a rule which would permit an allowance of compensation for the services of an attorney in an estate to be made directly to the attorneys. They argue a reasonable position was taken by the Oklahoma court in the case of *In re Estate of Wah-Kon-Tah-He-Ump-Ah*, 128 Okla. 179, 261 Pac. 973, where the court said:

"Where an executor may be allowed for fees paid to or to be paid to an attorney, out of an estate, as expenses necessarily incurred in the preservation of such estate it is immaterial whether such item of expense be first allowed to the executor and by him paid to the attorney, or whether it be allowed direct to that attorney." (Syl. ¶ 3.)

They argue it is not to the benefit of the attorneys or the estate when the allowance is made to the fiduciary for the benefit of the attorneys in the following situations:

"1. Where, as here, the fiduciary is a non-resident of Kansas.

"2. Where, as here, the fiduciary takes the allowance from the estate and refuses to pay his attorneys, as directed by the Court.

"3. Where the fiduciary is insolvent.

"4. Where the fiduciary dies after receiving the money from the estate and before paying the attorneys.

"5. Where the fiduciary dies before receiving the money from the estate."

Notwithstanding the unquestioned right of an executor or administrator to employ attorneys to assist him in the administration of estates, and to be reimbursed for the expenses of counsel fees, the rule in most jurisdictions is that an attorney must look for compensation to the personal representative who employed him, in his individual and not in his representative capacity; and for his services the executor is personally responsible.

Many jurisdictions adhering to such rule, however, recognize exceptions when the attorneys' claim is allegedly uncollectable from

the representative, especially in cases of insolvency of the representative, or where the representative is absent from the jurisdiction. In such cases the attorney is generally entitled to be *subrogated* to the rights of the representative by proceedings in equity and may compel the representative to enforce such claim against the estate for the benefit of such attorney, thus directly enforcing the payment of his compensation out of the assets of the estate. ( See, 100 A. L. R. 64, 72, 74. )

The facts presented by the record herein do not authorize the court to define the extent to which exceptions may eventually be recognized, but certainly justice demands that recognition be given the Kansas attorneys' right of subrogation, where the fiduciary for whom services are rendered in an estate resides in another jurisdiction.

The probate court in the instant case, cognizant that it had a *nonresident fiduciary* conducting an ancillary administration, in the exercise of its equitable powers under 59-301, *supra*, wisely saw fit to name the attorneys for whose services the allowance of compensation was made to the executor in the order of final settlement, and no appeal having been taken from this order within thirty days it became final. By this order of final settlement, as we construe it, the probate court gave equitable recognition to the subrogation rights of appellants as the Kansas attorneys for the nonresident ancillary executor ( appellee ), who was obligated on his application for discharge to satisfy the probate court that he had complied with its order disbursing the funds allowed him as executor for the services of his attorneys *to the named attorneys*. On the record here presented the appellee's failure to comply was in contempt of the order of the probate court.

The probate court in the exercise of its power to compel the performance of the duty incumbent upon the fiduciary, to account for his payment to the attorneys designated in such final order, refused to discharge the executor.

Upon all of the facts, conditions and circumstances presented by the record in this case we think the executor is obligated to file his receipt showing payment of $15,000 to Stowell and Stowell, and satisfy the probate court that such payment had been made.

The judgment of the lower court is reversed.

Robb, J., dissents from paragraph No. 2 of the syllabus and the corresponding portions of the opinion.