No. 47,303

In the Matter of the Estate of Gordon L. Weaver, deceased, (VERA M. REED, et al, *Appellants,* v. WEAVER LINDSTEN, et al, *Appellees.*)

(520 P. 2d 1330)

Opinion filed April 6, 1974.

*James P. Mize,* of Clark, Mize & Linville, Chartered, of Salina, argued the cause, and *Donald H. Postlethwaite,* of St. Francis, was with him on the brief for the appellants.

*Selby S. Soward,* of Zuspann, Soward, Whalen & Burr, of Goodland, argued the cause, and *John G. Kite,* of St. Francis, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This *is* an appeal by the next of kin of an intestate decedent, Gordon L. Weaver, from an order of the district court of Cheyenne County, Kansas, appointing three co-administrators to serve the estate. The substance of the order of the district court was a refusal to appoint the nominee of the next of kin as the sole administrator of the estate, thereby forcing upon the next of kin unwanted co-administrators whose interests were adverse to the next of kin.

The appeal calls for application of K. S. A. 59-705 (1) to the facts presented by the record.

On June 21, 1973, Gordon L. Weaver died intestate. At the time of his death the decedent owned government bonds, certificates of deposit, stocks and other securities and personal property with an approximate value of $2,400,000. He also owned 53½ quarter sections of Cheyenne County, Kansas, land from which the estate received 70,000 bushels of wheat harvested in 1973.

Gordon L. Weaver's wife predeceased him and he was not survived by any lineal descendants. Weaver's parents predeceased him and were not survived by any descendants other than Gordon. Weaver's paternal grandparents were survived by six children in addition to Gordon's father. There are a number of paternal cousins surviving Gordon. These people are referred to in the record as the Weaver side of the family. Gordon's maternal grandparents were survived by four children in addition to Gordon's mother. There are also a number of maternal cousins surviving Gordon, and they are referred to as the Grandstaffs. Gordon L. Weaver was survived by a total of 39 next of kin.

On June 23, 1973, two of the decedent's in-laws petitioned the Cheyenne County probate court for the appointment of four of decedent's in-laws, A. A. Lindsten, John W. Lindsten, Delmont L. Price and Delmer Price, as co-administrators of Weaver's estate.

On June 27, 1973, seven of the decedent's paternal cousins petitioned the probate court alleging an interest in the estate and requesting the appointment of Edgar Robertson as the administrator of the estate.

Thereafter the decedent's in-laws amended their petition to add Edgar Robertson to the list of co-administrators. Whereupon the next of kin amended their petition to request that Robertson be appointed to serve as the "sole administrator".

After a hearing on both petitions on the 20th day of July, 1973, the probate court appointed A. A. and John Lindsten, Delmer and Delmont Price, and Edgar Robertson as co-administrators. From that determination the next of kin perfected an appeal to the district court.

The appellants produced four witnesses in the district court proceeding. Two of them, Lloyd Wallen and Dorothy Hayworth, were cousins of the decedent. They both lived some distance from Weaver's home in Bird City. Wallen had served as an administrator in two estates and believed the task of administering an estate would be complicated by having more than one administrator. Both witnesses stated they wanted Robertson appointed as the sole administrator of the estate. Since neither witness lived in the vicinity they were not personally acquainted with Robertson and relied upon information they had gathered from other relatives and Don Postlethwaite concerning his qualifications to serve as the administrator. Neither witness had made any attempt to inquire into the in-laws' capabilities of serving as administrators.

Another Weaver cousin who testified was Vera Reed. Mrs. Reed assumed an active role in urging the appointment of Edgar Robertson as administrator among the next of kin. She stated her reason for wanting Robertson as the sole administrator as follows:

"I would like to have Edgar Robertson appointed administrator because I think he is very capable and he has done work in administering estate[s]. He administered my parents' estate and he has—he is well qualified; he is a man of integrity, and I believe that he could administer the estate. He is not a relative of either our family or of the Lindstens or Prices. I believe he is very impartial. I think he would administrate this estate in the way that it should be taken care of. He also has capability or facilities at the bank to help out with some of the foot work, shall we say, that goes into doing the work of an estate."

Mrs. Reed completed a genealogy of the Weaver and Grandstaff heirs. She wrote letters to all of them informing them of what was transpiring on the estate and expressing her, and other relatives', opinions concerning Robertson serving as the sole administrator.

In her first letter to the next of kin, Mrs. Reed stated the in-

laws and their attorney, Mr. Kite, had "interest adverse to those of Gordon's heirs." Mrs. Reed testified she believed the in-laws would be uncooperative in settling the estate because they would want the estate to remain open as long as possible so they could continue to farm the Weaver land as tenants.

The letter informing the heirs of the result of the probate court proceeding stated that all the cousins who appeared at the probate court were in complete agreement on the following things:

"1. We want Edgar Robertson, Bird City, Kansas, as sole administrator.

"2. We want Don Postlethwaite, St. Francis, Kansas, as the estate attorney."

Also, Mrs. Reed sent the heirs a form to be signed, notarized and returned, which requested the court to appoint Robertson as the sole administrator and opposing the appointment of any of the in-laws. All 39 of the Weaver and Grandstaff heirs returned the Request for Appointment indicating they wanted Robertson as the sole administrator. These were admitted into evidence in the district court.

Edgar Robertson was the only other witness for the appellants. Robertson is 66 years of age, and the president of the Security State Bank in Bird City, Kansas. He also owns a section of farm land and farms some of it himself. He was Gordon Weaver's banker approximately ten years, and did his tax returns.

Robertson has served as executor or administrator in ten or twelve estates. The largest one he has handled involved a little over $2,000,000. He does not believe having five co-administrators will be of any assistance to the disposition of the estate, and does not want four co-administrators to work with him. He testified he was competent to handle the estate as its sole administrator.

Robertson did not have any specific knowledge concerning the leasing and custom farming arrangements between Gordon Weaver and his various tenants, though he had a general understanding concerning the operations.

The witnesses produced by the appellees were the four in-law nominees for co-administrators, A. A. and John Lindsten and Delmont and Delmer Price, and an unrelated farm tenant of Gordon Weaver, Ralph Seymour.

Mr. Seymour had farmed for Weaver for over 30 years. He regarded the Lindstens and Prices as excellent farmers, and testified the two families were closer to Weaver than anyone he knew of.

The Lindstens are nephews of Gordon Weaver's predeceased

wife. They have farmed together on Weaver's land since 1946. Most of the land is farmed on a lease basis but they did farm a portion of it on a custom and partnership arrangement with Weaver. The lease was written but the custom farming agreement was oral. Under the custom farming agreement the Lindstens kept track of the time they spent on farming the ground and were paid for half of that time. In addition, they received three-eighths of the crop, with Weaver receiving five-eighths. Their practice was to settle their accounts in the fall after the wheat had been planted and it was apparent there was a healthy stand.

On June 21, 1973, when Weaver died, the Lindstens had worked the custom farmed ground three or four times which entitled them to $1,300 each. In the interim between Weaver's death and the August 20, 1973, district court proceeding, they had worked it a few more times, and as a result they were entitled to more money.

A. A. Lindsten testified as follows concerning why he wanted to serve as administrator on the estate:

"Well, I am a creditor, and I think was as close to Gordon as anybody, and I think I knew as much about his business as anybody and especially all the farming business interest I know I am. And I would like to see the estate settled up in a proper manner."

On cross-examination he agreed it was not necessary for him to be appointed administrator to assure the payment of his claim (arising from the custom farming) against the estate.

John Lindsten testified on cross-examination he wanted to be appointed permanent administrator because of Gordon Weaver's dislike for Don Postlethwaite.

The Lindstens testified they knew all of Weaver's tenants very well and were familiar with all of the agreements between the various tenants and Weaver. There were sixteen tenants on Weaver's land. Weaver had written leases with all of his tenants except for the custom farming with the Lindstens and an oral lease with one other tenant.

The Prices are also nephews of Weaver's predeceased wife. They have farmed land for Weaver for approximately 30 years on a landlord-tenant basis.

Delmont stated the following reason for wanting to serve as a co-administrator:

"I am a creditor for one thing, and the other reason would be that I know all the land and tenants, and I think I could serve to the best benefit of the heirs. And the other reason is Gordon's dislike for Mr. Postlethwaite."

After hearing the foregoing evidence the court made the following comments and announced the decision:

".  .  .   Now, of course another way this thing is unfortunate, having evidenced to this Court, and I have practiced law long enough, been on the bench long enough to know I think the primary fight in this case is between who is going to be the attorney for the estate. I don't think there is any question in my mind about it. That is what brought on this quarrel between these parties. *Nobody seems to be critical of Mr. Robertson* or any of the Prices or Lindstens. It simply gets down to a point, and the attorneys know it, and I can tell you, *when I came in this morning I tried to get them to agree to serve jointly either with Mr. Robertson or with all of these other men, too.* They couldn't agree on that. So this gets to be those unpleasant affairs where the Court has to decide the matter on this appeal. Both of the attorneys, Mr. Postlethwaite and Mr. Kite, have been friends of mine for a long time, and it is something *I hoped I could get them to go in and work together on the estate because I think that probably this is a large enough estate they probably could merit the allowance of fees for two attorneys.* But as I say, thy didn't see fit to do it.  .  .  ." (Emphasis added.)

The trial court made findings of fact and conclusions of law. The facts and conclusions which pertain to Edgar Robertson's suitability to serve as sole administrator of the estate are as follows:

✻    ✻    ✻    ✻    ✻

"6. The actual controversy arising between all the parties in this case is who should be selected as attorney for the administrator or administrators. Evidently the attorney for appellants had represented Vera Weaver Reed in some previous estate or litigation and Mrs. Reed was very instrumental in inducing the remainder of the appellants to insist on the appointment of Edgar Robertson as sole administrator, and Don Postlethwaite as the attorney for such estate. Exhibits 2 and 3 introduced at the hearing on August 20th clearly indicated that Mrs. Reed together with Mrs. Myrtle Weaver Higgins had created a rather adverse situation with respect to the appointment of the administrator. This Court can neither approve or condone the method employed by Mrs. Reed in writing the two letters referred to and it is a finding of the Court that she was assisted in the composition and preparation of these letters by the attorney for the appellants. The Court further finds that the decedent, Gordon L. Weaver, was the administrator of the estate of his father, Albert Weaver, and that he discharged Mr. Postlethwaite as his attorney for said estate some time about 1946, and that the decedent had an intense dislike for Mr. Postlethwaite. John G. Kite represented the decedent as administrator of the estate of his wife at the time of his death.

"7. This Court attempted in a conference with the two attorneys to induce them to act as co-counsel for any administrators appointed but was unable to obtain such an agreement.

✻    ✻    ✻    ✻    ✻

"11. At the time of the decedent's death the decedent was the owner of approximately fifty-three and one-half quarters (53½) of land in Cheyenne

County and which apparently is very productive land. Mr. Robertson operates a full section of land which he owns and in addition performs the duties as president of the Security State Bank at Bird City, Kansas. The Court finds that there is a limit to the capacity of one man to perform such duties as would be required by Mr. Robertson if he was appointed as sole administrator.

"12. The appellees, Delmont Price and John Lindsten, who were appointed as co-administrators by this Court were and are familiar with the method of operation of all of such land by the decedent, had assisted the decedent in the management of said land. Edgar Robertson was not familiar with the method of operation of a good portion of the land and knew only what had been told him by some of the appellees."

\* \* \* \* \*

"1. This Court concludes as a matter of law that all of the parties who have been appointed as administrators, Edgar Robertson, Delmont Price, and John Lindsten are competent to perform the duties as administrators. *However, the Court finds that Edgar Robertson is unsuitable to be appointed as sole administrator for the reason that it would work undue burden upon him to handle this entire estate and perform the other duties which he is required to perform.* In addition Mr. Robertson is not familiar with the method of operation of some of the land of the decedent which is farmed by some of the appellees and other parties.

"2. It is the conclusion of this Court that *in view of the fact that the Court has found Mr. Robertson unsuitable as sole administrator,* that under the provisions of K. S. A. 59-705 (3), that it is to the best interest of the estate and all persons interested therein that administration be granted to Edgar Robertson, Delmont Price, and John Lindsten as co-administrators of the estate of Gordon L. Weaver, deceased." (Emphasis added.)

Our statute governing the appointment of administrators is K. S. A. 59-705, which reads:

"Administration of the estate of a person dying intestate shall be granted to one or more of the persons hereinafter mentioned, suitable and competent to discharge the trust, and in the following order:

"(1) The surviving spouse or next of kin, or both, as the court may determine, or some person or persons selected by them or any of them.

"(2) If all such persons are incompetent or unsuitable, or do not accept, administration may be granted to one or more of the creditors, or to a nominee or nominees thereof.

"(3) Whenever the court determines that it is for the best interests of the estate and all persons interested therein, administration may be granted to any other person, whether interested in the estate or not."

The above statute pertaining to the granting of administration of an estate establishes three classifications in the order in which they shall be considered for the appointment of a suitable and competent person or persons to discharge the trust. The court has no power or authority to appoint any person falling under a lower

classification, unless it first finds that the person or persons designated by a prior classification are nonexistent, incompetent or unsuitable to discharge the trust or do not accept the trust. (*In re Estate of Paronto*, 163 Kan. 85, 180 P. 2d 302; and *In re Estate of West*, 165 Kan. 483, 195 P. 2d 616.)

Statutes regulating the order in which administration may be granted are ordinarily construed as mandatory and as leaving the courts no discretion in the matter, save where there are two or more persons equally entitled under the statute, or where a question arises as to the fitness or qualifications of the person or persons primarily entitled to the appointment. (33 C. J. S. Executors and Administrators, § 34, p. 924.)

Values of substance inhere in the right to letters of administration and those upon whom the right has been conferred by statute should not be deprived of it, except as the statute has provided. (*Williams v. Williams*, 24 App. D. C. 214, 217 [1904].)

Here detailed statutory provision has been made for the issuance of letters of administration under 59-705, *supra*, and an explicit system of priorities as between next of kin and others has been established; hence, if the next of kin in the first classification have submitted a nominee for appointment as administrator, who is not barred under a specific statutory disqualification, a creditor under the second classification or other person not in any preferred classification may not be appointed.

The appellees in their petition for the appointment of an administrator alleged Edgar Robertson to be a "proper and suitable person to whom to grant letters of administration"; their attorney, Mr. Kite, admitted into the record that the appellees conceded Edgar Robertson was a fit and suitable person to serve as administrator in every way; and none of the appellees filed any written defense to the allegations of the next of kin in their petition that "Edgar Robertson is a proper and suitable person to whom to grant letters of administration."

Furthermore, the next of kin who were the owners of this estate indicated their unanimous desire to have Edgar Robertson appointed as the administrator and objected to the appointment of anyone else.

There is no dispute that Edgar Robertson is a competent person to serve as administrator of this estate. The controversy concerns his suitability to serve as sole administrator. The trial court did

not find him unsuitable. It merely found him unsuitable to serve as the sole administrator. The trial court by appointing Edgar Robertson as one of the administrators clearly found him suitable to serve as administrator.

By its use of the word "suitable" the legislature intended to and did vest the probate courts, and on appeal the district courts, with discretionary power in determining whether persons were suitable to act as administrators. Such discretionary power when exercised must be upheld unless abused. (*In re Estate of West*, supra, p. 486.)

As in the case of *In re Estate of West*, supra, it was the duty of the district court in this case to determine whether there were any persons seeking appointment or properly selected who were suitable and competent for the position under the first classification in the statute, and, if so, appoint the person or persons who were eligible for the appointment pursuant to its terms.

To sustain the trial court's finding that Edgar Robertson was unsuitable to serve as administrator in this estate and thereby warrant the exercise of its power of discretion, it would be necessary that such finding be based upon evidence in the record. The finding cannot be made by the trial court without any relevant evidence whatever. (*In re Estate of Paronto*, supra.)

An appeal to the district court from the probate court appointing the administrators in this estate (see K. S. A. 1973 Supp. 59-2401 [2]) is heard de novo in the district court under K. S. A. 1973 Supp. 59-2408. Thus, it is only the evidence before the district court that is material on appeal to this court.

The thrust of appellants' points on appeal is that the trial court erred in concluding from the evidence that Robertson was unsuitable under 59-705, *supra*. The appellants allege the appellees have admitted Robertson's suitability on the record; there was no evidence the administration of the estate would overburden the personal capacities of Robertson; Robertson's lack of knowledge concerning the particularities of the decedent's farming operation is not a relevant consideration; and the trial court's conclusions were merely a maneuver to force the estate to employ multiple attorneys.

On the other hand, the appellees urge the trial court's conclusions are supported by substantial evidence and 59-705, *supra*, was properly applied. The appellees contend they consistently main-

tained no one individual, who does not have full time to devote to serving as administrator of this large an estate, would be suitable to serve alone, and the trial court was within its discretion in finding Robertson unsuitable because of his other responsibilities and lack of knowledge concerning decedent's farming operations.

We believe the trial court correctly perceived "the primary fight in this case is between who is going to be the attorney for the estate." Mrs. Reed and Mrs. Higgins apparently knew and worked with Robertson and Postlethwaite previously and wanted them to handle the estate on behalf of the next of kin. Through Mrs. Reed's efforts the next of kin, most of whom did not know the decedent or any of the nominees for administrator, were contacted and informed of the proceedings and also the feelings of the next of kin who knew the people involved concerning the appointment of an administrator and attorney. Relying on the local relatives' judgment all of the next of kin returned the forms designating Robertson to be the administrator. This is not a case involving antagonistic factions among the next of kin, for there was no disagreement among them as to who should be the sole administrator.

The in-laws were motivated, at least in part, to oppose the appointment of Robertson because he would select Postlethwaite for his attorney, and the decedent had disliked Postlethwaite and discharged him in his wife's estate.

Under K. S. A. 59-705 the next of kin, or "any of them", had the right to select Robertson as the sole administrator of their estate, if he was competent and suitable. The trial court found Robertson unsuitable to serve as sole administrator for two reasons: (1) It would be an undue burden upon him to handle the entire estate because of his other responsibilities, and (2) he was not familiar with the operation of some of decedent's land which is farmed by some of the appellees and others.

However, the trial court's statements at the conclusion of the evidence that "Nobody seems to be critical of Mr. Robertson" and "when I came in this morning I tried to get them [the attorneys] to agree to serve jointly either with Mr. Robertson or with all these other men, too", are inconsistent with his conclusions and indicate a belief that Robertson was suitable to serve as the administrator.

There is no evidence to support the trial court's conclusion that administering the estate would be an "undue burden" upon Robertson. It is undisputed Robertson is president of a bank, farms some

land, and is a trustee in a two million dollar trust, but there is nothing to show these activities would prevent him from ably administering the estate. While this is a large estate, there is no evidence it is too large for Robertson to properly administer. Robertson's uncontradicted testimony was that he could administer the estate. If anything, his access to the bank's facilities and personnel together with his attorney will assist him in administering the estate rather than hinder it.

The other basis for the court's finding that Robertson was unsuitable is that he was not familiar with the operation of some of Weaver's land. The evidence was, and Robertson was aware, that all the land was farmed on a landlord-tenant basis with written leases, except some land on an oral partnership-custom-farming basis by the Lindstens and an oral lease with one of the tenants. The record discloses the tenants are all good farmers and work independently, so that it would not be necessary for Robertson to closely supervise the farming operations. Also, Robertson is familiar with the local farming methods since he farms some land of his own. Robertson's lack of specific knowledge of the decedent's farming operations is irrelevant. One of the purposes of administration is to inventory the assets and determine these facts. It would be an unusual situation for any one person to know all the facets of a decedent's business interests.

The appellees make repeated reference to the fact that they had the closest relationship with the decedent and worked with him daily, while very few of the appellants had any contact with him at all. This is irrelevant to a determination of who should be granted letters of administration under K. S. A 59-705. The appellants are the undisputed next of kin and therefore have priority in selecting an administrator of their choice no matter how the decedent or creditors felt about the nominee or his attorney. In fact, the apparent antagonistic and adverse interest of Delmont Price and John Lindsten as farm tenants of the decedent furnished another ample reason why the trial court should have declined to honor their petition that they be appointed. (*In re Estate of West*, supra; and *In re Estate of Anderson*, 168 Kan. 299, 212 P. 2d 375.)

It is understandable why the next of kin owners of this estate would prefer to have a highly qualified banker to serve as the fiduciary to deal with the farm tenants of the land during the course

of administration of the estate, rather than to have some of the tenants dealing with themselves.

The trial court had before it the nominee of the next of kin whom they designated to be appointed administrator of the estate. The record discloses their nominee was competent and suitable for the position, and falling within the first classification of 59-705, *supra*, their nominee was eligible for the appointment. Accordingly, the trial court's refusal to appoint Edgar Robertson as the sole administrator of the estate of Gordon Weaver, deceased, was error.

The trial judge improperly injected himself into this case as evidenced by his own remarks in the record that he was ready to appoint Edgar Robertson sole administrator of this estate, provided Mr. Kite and Mr. Postlethwaite would agree that both represent the estate as its attorneys. Mr. Kite and Mr. Postlethwaite had no authority whatever to make such an agreement and bind the fiduciary to it. Under Kansas law it is the sole province and responsibility of the fiduciary to choose and employ his attorney. (*In re Estate of Bertrand*, 188 Kan. 531, 542, 363 P. 2d 412; and *In re Estate of Eyth*, 157 Kan. 268, 139 P. 2d 378.)

The trial judge also improperly stated:

". . . I hoped I could get them [Kite and Postlethwaite] to go in and work together on the estate because I think that probably this is a large enough estate they probably could merit the allowance of fees for two attorneys. . . ."

The district court had no authority to dictate who should be the attorney for the fiduciary in this matter, or to force the employment of multiple attorneys upon the next of kin who are the owners of the property in this estate.

The judgment of the lower court is reversed with directions to appoint Edgar Robertson the sole administrator of the estate.