No. 35,861

In the Matter of the Estate of Lillian Eyth, Deceased. (MILTON HOSSFELD, EDWIN HOSSFELD and EDITH BRUNT, *Appellants*, v. A. D. WEISKIRCH, JR., Administrator, *Appellee.*)

(139 P. 2d 378)

Opinion filed July 10, 1943.

*E. R. Sloan,* of Topeka, argued the cause, and *W. Glenn Hamilton, Floyd A. Sloan* and *Eldon R. Sloan,* all of Topeka, were on the briefs for the appellants.

*Barton E. Griffith,* of Topeka, argued the cause for the appellee.

The opinion of the court was delivered by

PARKER, J.: On June 6, 1941, A. D. Weiskirch, Jr., an attorney, and Edith Brunt were appointed by the probate court of Shawnee county as special administrators of the estate of Lillian Eyth, deceased. Edith Brunt was a sister of the decedent and performed few, if any, active duties as administrator. In view of this fact, and since her interests are now adverse to those of Weiskirch, no further reference will be made to her fiduciary activities.

With respect to assets it can be stated a complete inventory and appraisal of the Eyth estate made within a few days after the appointment of Weiskirch showed the gross value thereof to be $43,624.98. Included in the inventory was a junk business the assets of which were appraised at approximately $5,400 and a business known as the Community Café, the assets of which were appraised at slightly more than $400. Real estate belonging to the estate was subject to mortgage and tax liens in excess of $11,600, and debts of decedent approximated $2,260, for which claims were filed and allowed.

An examination of the record discloses the nature and extent of the undisputed services of Weiskirch in behalf of the estate, who was required to give a bond in the sum of $18,000 for faithful performance of his duties, to be as follows: He performed the usual and customary work required of a fiduciary in administering and closing up the affairs of an estate having assets and liabilities of the size and character heretofore indicated. In addition, the businesses referred to were going concerns, and it having been determined it was advisable they so continue, he had general supervision and control over them from the date of his appointment until his discharge as administrator on December 22, 1942, although during that period of time they were each operated by managers who had active charge thereof. However, daily reports of the progress of the businesses were made to Weiskirch and monthly reports relative to their progress were made by him to, and approved by, the probate court. There was testimony, although not conceded by appellants, as to amounts, that during such time the junk concern had a gross income of over $61,000 with a gross profit of over $16,000 and a net profit to the estate of $8,000 to $10,000, while the café was operated at a profit in excess of $600. But this was not all of the services performed by Weiskirch for the estate. By far the greater portion of the property owned by

the decedent on the date of her death was acquired by her under the terms of the will of her predeceased husband William A. Dyal. While the estate was being administered Albert T. Dyal, a son of William A. Dyal, brought a suit in district court to construe his father's will, claiming that he was entitled to all of the property left by his father and remaining undisposed of by Mrs. Eyth. The judgment rendered by the district court in that case was appealed by the son to the supreme court and the issues therein involved were determined in *Dyal v. Brunt,* 155 Kan. 141, 123 P. 2d 307. Later Weiskirch participated in a compromise settlement with Albert T. Dyal which was approved by the probate court. In addition there were a number of other substantial claims filed against the estate which required the services of an attorney. As to all this litigation and all matters affecting the estate, with the exception of the Dyal settlement where heirs had employed counsel to personally represent them, the legal work required, including the preparation of pleadings, orders, papers, notices, etc., was performed by Weiskirch without going to the expense of employing an attorney to represent him in his fiduciary capacity. While the parties are not in entire accord as to the amount of work performed by Weiskirch, we believe the foregoing is a fair analysis of what the evidence disclosed its nature and extent to be.

Until shortly prior to September 17, 1942, the date on which a petition for final settlement was filed, the record discloses no material controversy between Weiskirch and the heirs of Mrs. Eyth, although Edith Brunt did testify at the trial of the instant case in district court that it was not until about a month after July 22, 1941, when an allowance of $1,000 was made to Weiskirch for an administrator's and an attorney's fee, and until the month of March, following December 24, 1941, the date on which an allowance of an additional $1,500 was made to him for services as co-administrator and attorney up to and inclusive of that date, that she learned anything about such allowances. About that time Weiskirch announced his intention of claiming an additional $2,500 for services from December 24, 1941, to October 19, 1942, the date set for the hearing of the petition for final settlement. Thereupon, the heirs employed an attorney to represent them at the hearing and Weiskirch did likewise. At this hearing the probate court ratified and approved the final and supplemental accounts submitted and filed by the administrators, approved and allowed

Weiskirch's claim in the sum of $1,250 for services and made other appropriate orders relative to the closing up of the affairs of the estate. From this order and judgment the heirs appealed to the district court, their notice of appeal in part stating they appealed from the order and judgment "rendered in the above-entitled matter on the 24th day of October, 1942, wherein the court made an order allowing an account of the administrators and an order directing an allowance for the expense of administration, . . ." Although the above-quoted portion of the notice of appeal is all we require for our purpose, it should here be stated, in fairness to the position assumed by the heirs, such notice also contained the following statement "more particularly the following orders and decrees approving the following items of the accounting and the allowance of the expense of administration (here followed a detailed statement of the allowances to Weiskirch)."

After the transcript of proceedings had been transmitted to the district court Weiskirch filed a supplemental petition, which in addition to a general recital of the proceedings in probate court and the factual situation which caused him to employ an attorney, contained in substance the following allegations: Subsequent to the appeal the heirs petitioned the probate court for distribution of the assets of the estate conditioned on filing a bond to pay his claim and costs and a hearing was had on such petition; it was necessary in connection with the appeal for the administrator and his counsel to prepare for trial in district court and anticipated that additional work would be required for the trial and subsequent certification of the judgment back to the probate court; the contest as to the allowance to the administrator was occasioned by the heirs, and the administrator in good faith had been required to defend his final settlement and a reasonable allowance to himself; that by reason thereof he should be allowed compensation for additional services and services of his counsel in connection with the contest and appeal over his final allowance.

The testimony offered at the trial in district court on behalf of Weiskirch as to the fair and reasonable value of his services as administrator under all the evidence, after he had testified regarding the nature and extent of such services substantially as heretofore related, can be briefly summarized. One qualified witness stated an aggregate fee of $4,000 to $4,500 would be reasonable. Included in his computation was $750 for services as attorney in

*Dyal v. Brunt,* supra, and $200 for additional services and expenses as administrator on the final hearings in probate and district court. Deducting the $2,500 previously paid he said it would leave a balance of $1,500 to $2,000. Another stated the reasonable value of all his services would be $4,000. Included in his estimate was an allowance of $750 as a fee in *Dyal v. Brunt* and $200 to $250 for the final hearing above referred to. Assuming that $2,500 had previously been paid this witness said an allowance of $1,500 additional would be fair compensation. On behalf of the heirs a qualified witness stated a reasonable administrator's fee for handling the estate would be $1,600. His opinion did not take into consideration the value of legal services in *Dyal v. Brunt,* or any other legal service performed by Weiskirch for the estate. Another witness, whose evidence will be referred to presently, attempted to testify on this question on behalf of the heirs but was not permitted to do so by the trial court because of an objection to the form of the hypothetical question asked him and an objection he had failed to show sufficient knowledge of the factual situation to permit him to qualify as a competent witness on the question of reasonable value of such services.

As to the value of the services of an attorney for handling the final litigation in probate court and the appeal to district court there was no dispute, the only witness who testified stating $300 would be a reasonable fee.

The district court found that Weiskirch should be allowed in addition to the $2,500 theretofore allowed by the probate court, the sum of $1,500 and that his attorney should be allowed $200 for services. Judgment was rendered in accordance with such finding and the heirs, after the filing and overruling of a motion for new trial, appealed to this court.

Included in appellants' specification of errors is a claim the trial court erred in the admission of evidence relating to the time spent and work done by the appellee in the collection of his claim for administrator's fees and in rendering judgment for the value of such service.

A proper consideration of these contentions requires an examination of the record so that we may know the existing situation at the moment the trial court determined the matters complained of. It is true there was evidence from which it could be concluded that on the final hearing in probate court and the appeal in district

court the sole issue presented and the only time spent and work performed by appellee and his attorney might have been in connection with the allowance of the claim for additional compensation as administrator. But can it be said as matter of law that the trial court should have restricted the evidence to that one question or that it was the only issue to consider in arriving at its decision? Our examination of the statute, of the proceedings and of the evidence, impels a conclusion it was not.

With respect to the probate proceeding G. S. 1941 Supp. 59-2247 provides: "The petition of an executor or an administrator for a final settlement and accounting, and a determination of the persons entitled to the estate of a decedent, shall, in addition to other requirements, contain: (1) a statement of the account; . . ." G. S. 1941 Supp. 59-2249 reads: "On the hearing, unless otherwise ordered, the executor or administrator shall, and other persons may, be examined relative to the account and the distribution of the estate . . ." It is apparent from the language just quoted that no one individual or a number of individuals can determine in advance as to what is to be taken up at the final hearing. The only person who can in any way limit the extent of such hearing is the probate judge, and it does not appear that any order to that effect was made in this case. Therefore, it cannot be said that appellee and his attorney did not render services in behalf of the estate in preparing for and appearing at the hearing on the final settlement.

What was the situation with respect to the issues involved on the appeal in district court? The notice of appeal, hereinbefore referred to, stated that appellants appeal from the order and judgment of the probate court wherein "the court made an order *allowing an account of the administrators. . . .*" (Italics supplied.) We must also take cognizance of the fact that in district court the trial of an appeal from probate court is a *de novo* proceeding (G. S. 1941 Supp. 59-2408). We must also consider colloquies which took place between court and counsel immediately preceding and during the trial. Immediately preceding the commencement of the trial the record discloses the following colloquy:

"The Court: Let me ask a question at the beginning. Is there any question in this appeal except the amount of the allowance? I am asking the appellants that.

"Mr. Sloan: It involves the legal questions incident thereto.

"The Court: But for instance, Judge Sloan, in the notice of appeal it is stated 'You and each of you are hereby notified that Milton Hossfeld, Edwin

Hossfeld and Edith Brunt appeal from the order, judgment and decree and decision of the Probate Court of Shawnee County, Kansas, rendered in the above entitled matter on the 24th day of October, 1942.'

"Mr. Sloan: I think that would include the whole order.

"The Court: Is this hearing to be limited?

"Mr. Sloan: I want to state this. We had trouble about it in the Probate Court, and I want to state it. As to the amounts that are set out in this report as to payments made and amounts received, we do not question. We do question the legality of some of the payments that were made."

During the trial and while appellee was being examined on direct, the record discloses the following questions, answers and comments:

"Q. Do you have an opinion as to what would be the fair and reasonable value of your services, in addition to all the other allowances that may be made to you for your services and which have been occasioned by the contest in the Probate Court and in this court?

"Mr. Sloan: Just a minute. Object as incompetent, irrelevant and immaterial.

"The Court: I would like to hear the reason. What is the reason for objection?

"Mr. Sloan: Unless he in some way connects it with something he has done for the estate, but his question puts it on what he served working for himself.

"The Court: At the beginning of this hearing I asked what the scope of this appeal was, whether the appeal related solely to the allowances made by the Probate Court to Mr. Weiskirch for his services as administrator. Counsel for the appellant advised me at that time that that was just part of it, that the question was also raised as to the validity of orders made in July, 1941, and December, 1941, and based on that I do not think the question is incompetent. Overruled.

"The Court: As I say, Judge Sloan, this is a trial *de novo* of the orders that were made by the Probate Court on October 24, 1942, in which certain allowances were made to Mr. Weiskirch for his services. I was interested at the beginning of this hearing whether that was the sole question as to the reasonableness of the allowances made by the Probate Court, and I was informed at that time that that was not the only question. Now then, if there are additional things to be drawn into this hearing, which is a hearing *de novo* and based on the appeal from the whole order, judgment and decree—if there is to be brought in issue in this court all the things that were heard in the Probate Court, not only the question of allowances made to Mr. Weiskirch for his services as administrator, but anything else that you may choose to raise (and I don't know what the extent of your objections or questions will be yet), this question might be competent."

During his examination and apparently subsequent to the proceedings just quoted, the appellee in response to a question as to what would be a fair compensation for such services and expenses, answered the actual cost of the contest to him was $150.

Nor can we overlook in our consideration of these questions there

is evidence disclosing that both the administrator and his attorney performed work in connection with the preparation and filing of the journal entry of final settlement and between November 12, 1942, and December 22, 1942, in disposing of proceedings incident to the filing and allowance of a petition for partial distribution, the preparation and approval of the distributees' bond and the final discharge of appellee as administrator.

In the light of what has just been related we are convinced the administrator and his attorney were rendering services for the estate in preparing for and looking after the hearing in both the probate and district courts as well as during the interim between such hearings. The weakness in appellants' argument, which in our opinion is fatal to their contention, rests in the fact they erroneously assume the only issue involved was the establishment of appellee's claim for services. While it is true that eventually developed to be the only disputed question, nevertheless, as we have shown, appellee could have no assurance that was the situation and was entitled to, in fact was required to, hold himself in readiness to defend the entire account. Since our statute expressly provides every fiduciary shall be allowed his necessary expenses incurred in the execution of his trust and shall have compensation for his services and those of his attorneys (G. S. 1941 Supp. 59-1717) it follows the contentions of appellants heretofore discussed cannot be upheld.

In arriving at the conclusion just announced it should be noted we do not attempt to determine whether those contentions would have merit in a case where the sole issue involved was the establishment of an administrator's claim. All we decide here is that under the facts and circumstances of this case the issues involved were general in nature and not limited to such a question. There will be time to give consideration to that question when, as provided for by G. S. 1941 Supp. 59-2401 (13), an appeal is taken from an order directing an allowance, or refusing to direct an allowance for the expenses of administration.

The reasoning applicable to the questions just determined disposes of appellants' contention the trial court erred in receiving evidence in relation to services rendered by the attorney for the appellee. If the administrator was entitled to compensation for his services it was proper to admit evidence as to the services performed by the attorney employed by him.

We now direct our attention to appellants' contention the trial

court erred in rendering judgment in favor of such attorney. This objection is indeed serious. The judgment of $200 was to the attorney, not to the administrator for the benefit of the attorney, and we have here no cross appeal which authorizes any consideration of error in its rendition. Long ago this court held that an attorney employed by an administratrix to assist her in administering her trust, or to prosecute or defend an action for or against her in her official capacity, has no claim he can enforce directly against an estate (*Brown v. Quinton*, 80 Kan. 44, 102 Pac. 242). Evidence of the fact this decision was based upon no misconstruction of the statute applicable to such a situation is found in the later case of *Brown v. Quinton*, 86 Kan. 658, 122 Pac. 116, wherein it was held that compensation for services of the attorney could be personally recovered from the individual who had contracted for and received the benefit of them while acting as administratrix of such estate. The language of G. S. 1941 Supp. 59-1717 providing that: "Every fiduciary . . . shall have such compensation for his services and those of his attorneys as shall be just and reasonable," is similar to that of the statute considered by this court in the cases just cited. Notwithstanding our recognition of the value of the services of the attorney to the administrator and the reasonableness of the fee awarded to him, the statute and those decisions require a conclusion the trial court erred in rendering judgment in his favor against the estate.

Appellants urge that the trial court erred in refusing to receive the testimony of one John Kirk, vice-president and trust officer of the National Bank of Topeka. The witness had had considerable experience in handling estates as a trust officer. On the motion for new trial his affidavit was presented to the trial court but is not here for review. However, the statement is made the affidavit recites that if he had been permitted to testify he would have affirmatively answered a question as to whether he could state what would be a reasonable compensation for the administrator and would have fixed the amount between $1,500 and $1,600. This witness was not permitted to testify because of the objection of appellee as to the form of the hypothetical question propounded to him and because his testimony disclosed he did not have possession of sufficient information regarding the work performed by appellee to permit him to base a judgment on the reasonable value of his services. As we understand the rule, when an executor or administrator is an attorney and in such capacity renders services to the estate he is entitled

to compensation for such services in a fair and reasonable amount in view of all the circumstances of the estate and that the value of his services is to be taken into consideration in determining the total amount to which he is entitled as administrator (*Nelson v. Schoonover*, 89 Kan. 799, 783, 132 Pac. 1183). From our examination of the record it appears the hypothetical question asked this witness did not include any reference to the value of services performed by appellee as attorney. In this respect it was lacking in one necessary element required to enable the witness to give his opinion as to the value of such services. Moreover, in this state the form of hypothetical questions and what may be embraced therein are so dependent upon the particular circumstances of each case that control over the same must be left largely to the discretion of the trial judge, and his rulings thereon will be reversed only for an abuse of such discretion (*Commercial Travelers v. Barnes*, 75 Kan. 720, 728, 90 Pac. 293).

Final specifications upon which appellants rely are that the judgment was not supported by the evidence and the trial court erred in rendering judgment in favor of the appellee. The record clearly discloses substantial competent evidence tending to establish the nature and extent of appellee's services and the reasonable value thereof. It must be conceded there was conflicting testimony which, if given favorable consideration would have justified a judgment in a less amount but it was the duty of the trial court to determine that question from all the facts and circumstances as disclosed by the evidence. The determination of the amount of a reasonable administrator's fee is a question which rests largely in the sound discretion of the trial court (*Adams v. Brothers*, 155 Kan. 23, 122 P. 2d 757) and where, as in this case, abuse of discretion is not assigned as error its judgment will not be disturbed.

One other question remains for our consideration. Appellee has filed a supplemental petition for an additional allowance to him for the services of his attorney in this court. The amount claimed is only $300. However, any consideration of this petition would require a review of the judgment making a final award to the appellee as administrator and since no cross appeal was filed by him that judgment cannot be disturbed.

The judgment in favor of the administrator is affirmed and the judgment against the estate for attorney fees is reversed.

HARVEY, J., dissents.