(62 P.3d 674)

No. 88,117

In the Matter of the Estate of LUCY G. PETESCH, Deceased,

Opinion filed February 7, 2003.

*Phillip A. Burdick*, of Gernon, Burdick & Keck, of St. Joseph, for appellant.

No appearance by appellee.

Before JOHNSON, P.J., ELLIOTT, J., and WAHL, S.J.

JOHNSON, J.: John Petesch appeals the district court's order allowing him executor's fees and expenses in an amount less than he requested. Finding no abuse of discretion, we affirm the district court.

Lucy G. Petesch died testate on February 2, 1999, leaving an estate initially appraised at under $75,000, primarily consisting of 120 acres of farmland, a small herd of cattle, and two vehicles. The testatrix's principal beneficiaries were her four children: John Petesch, Dennis Petesch, Rose Marie Wigley, and Connie Beeson. Initially, John Petesch was appointed special administrator to manage and care for the farmland and cattle. He was appointed executor when the will was admitted on March 5, 1999.

On April 19, 1999, pursuant to the executor's petition, the court ordered, *inter alia*, that the real estate, cattle, vehicles, and other personal property be sold at a private auction involving the four children. This was the last amicable, uncontested proceeding the court would see in this estate. The auction was held and Dennis Petesch made the high bid for the cattle and real estate. Dennis, as buyer, and John, as executor of the seller, executed a real estate contract on April 30, 1999, providing for a June 1, 1999, closing date. On May 5, 1999, Dennis sent the estate a $14,500 check for the cattle purchase which was returned, uncashed. On May 7, 1999, Connie Beeson filed a petition to set aside and disapprove the real estate contract and all personal property sales effected at the private auction, essentially claiming the sales were conducted in a coercive and unfair manner. John did not disagree with that action. Ultimately, in December 1999, the court denied Beeson's petition and confirmed the sale of real estate and all sales of personalty. A $14,500 check for the cattle was deposited in the estate account on December 23, 1999. Shortly thereafter, Dennis began feeding the cattle.

Unfortunately, the court's confirmation of the sales did not expedite the administration of the estate. Attorneys withdrew; new attorneys entered the fracas; Dennis moved to compel John to comply with the confirmed real estate sale; John petitioned to terminate the real estate contract. At an October 20, 2000, hearing the trial court ordered that the real estate sale was to be closed

within a designated 10-day time period. The estate deposited the real estate sale proceeds on October 26, 2000, albeit the journal entry of the October hearing was not settled and filed until April 26, 2001. Whereupon, John filed a notice of appeal, which he subsequently withdrew. A petition to close the estate was filed July 13, 2001, in which John claimed executor's fees and expenses of $29,034.31. Predictably, objections were lodged to the amount of executor's fees.

The claimed fees and expenses covered the period from John's February 2, 1999, appointment as special administrator through the October 26, 2000, real estate sale closing. John used an hourly rate of $15 and claimed a total of 982 hours, which included daily trips to the farm. In addition, John claimed a mileage reimbursement of 7,710 miles at $.32 per mile; the majority of the 'miles involved the daily trips to the farm. The claim also included: (1) expenses that John had paid personally prior to the closing of the real estate sale, but which had been reimbursed from estate funds following consummation of the real estate sale; (2) interest on John's "loan" to the estate; and (3) expenses personally paid by John, but not yet reimbursed by the estate.

The trial court found the hourly rate of $15 to be reasonable and found no fault with John's management of the estate from initial appointment until December 1999 when the sales were confirmed. Thereafter, the court opined, proper estate management only required two trips to the farm per month and the executor's total claim for hourly compensation and mileage reimbursement was reduced to $11,115.96. Interest on John's loan to the estate was disallowed. Also, the court specifically designated the expenditures it would allow as being necessary for the administration of the estate. John now asserts the trial court erred in reducing his compensation and reimbursement for mileage and expenses. Further, he argues he is entitled to additional compensation and reimbursement, as well as additional attorney fees and costs.

John's brief structures his appeal as involving four issues: (1) The district court erred in not allowing the full amount of John's requested compensation and mileage; (2) the district court erred in not allowing the full amount of John's requested expense reim-

bursement; (3) John is entitled to additional compensation and reimbursement; and (4) John is entitled to additional attorney fees and costs incurred as executor. There were no other briefs filed.

*COMPENSATION AND MILEAGE*

John cites to the 60-year-old case of *Foss v. Wiles*, 155 Kan. 262, 124 P.2d 438 (1942), overruled on other grounds *In re Estate of Goodburn*, 210 Kan. 740, 504 P.2d 612 (1972), for the proposition that probate courts are to exercise equitable powers in determining any matter properly before them. Thus, John argues, we are imbued with the same equitable powers, which makes our standard of review unlimited. We disagree. "The determination of the amount of a reasonable administrator's fee is a question which rests largely in the sound discretion of the trial court." *In re Estate of Eyth*, 157 Kan. 268, 277, 139 P.2d 378 (1943). Our scope of review is limited to determining whether the trial court abused its discretion, *i.e.*, whether the decision was arbitrary, fanciful, or unreasonable. See *State v. Whitesell*, 270 Kan. 259, 276-77, 13 P.3d 887 (2000).

Initially, John points to K.S.A. 2002 Supp. 59-2249, the statutory provision governing, *inter alia*, the hearing on the petition for final settlement and the final decree. He argues that since this provision directs that the executor's account "shall be settled and allowed," the court must award all requested fees and expenses so long as the executor actually expended the claimed time and money. This argument ignores the specific statute governing an executor's compensation and expenses, which provides: "Every fiduciary shall be allowed his or her necessary expenses incurred in the execution of his or her trust, and shall have such compensation for services and those of his or her attorneys as shall be just and reasonable." K.S.A. 59-1717.

An executor is a fiduciary of the probate estate. K.S.A. 2002 Supp. 59-102(2) and (3). The executor owes a duty to the estate as a whole, not to each individual heir. See *Quinlan v. Leech*, 5 Kan. App. 2d 706, 623 P.2d 1365 (1981), and K.S.A. 59-1703. Thus, the district court, in allowing an executor's claimed compensation and expenses, must find that the provided services and incurred ex-

penses were reasonably necessary for the proper administration of the decedent's estate. Services provided or expenses incurred solely to benefit one or more of the heirs or beneficiaries to the detriment of or without any benefit to the estate are not properly compensable or reimbursable from the estate assets.

Here, the district court allowed compensation and mileage to John for his daily trips to the farm up to the date the court confirmed the sales of the farm and cattle to Dennis. There is no one before us contesting that decision. Evidence was presented from which one might infer that daily farm trips were unnecessary, even before the sales confirmations. Further, one might look askance at an executor's fee that constitutes approximately 10 percent of the total estate. On the other hand, the evidence would also support a finding that initially, John was conscientiously performing his fiduciary duties to preserve and manage the probate estate. Therefore, we find no abuse of discretion in allowing John the full amount of claimed compensation and mileage from his appointment date through the sales confirmation date.

Following the confirmation of the sales, Dennis commenced feeding the cattle which were located on the farm. Thereafter, the district court opined that the executor could reasonably accomplish proper management of the estate assets by making only two farm trips per month. The court applied John's proffered hourly and mileage rates to compute the allowance for the number of trips found to be necessary and disallowed John's claim for the remaining trips. John may well have had an interest, as an heir and beneficiary, in making daily farm trips. However, the district court's decision that the estate only benefitted from two trips per month was in no way arbitrary, fanciful, or unreasonable. The district court's allowance of executor's fees and mileage reimbursement is affirmed.

*EXPENSES*

The district court reviewed John's estate expenditures and allowed those it determined to be necessary; the remaining expenditures were disallowed. Reimbursement was allowed for nearly all of the expenditures from February through April 1999. After April

1999, the court disallowed reimbursement for farm utilities; insurance and license plates for an estate automobile; dog and cat food purchases; and interest on John's purported loan to the estate.

Although appellant designates his expenditure disallowance challenge as a separate issue, he makes no separate legal argument in support of his position. He simply refers us to his argument on the second issue and states: "Certainly, Lucy Petesch would not have wanted her animals to go unfed or cared for simply because the trial Court [*sic*] made a verbal ruling on December 17, 1999."

Our case law does not provide a clearly defined standard for reviewing a district court's allowance or disallowance of an executor's expenditures. However, the issue is sufficiently analogous to the determination of a reasonable executor's fee for us to apply the same standard of review. See *In re Estate of Eyth*, 157 Kan. at 277 (applying an abuse of discretion standard to review the trial court's determination of a reasonable administrator/executor's fee); *Whitaker v. Estate of Whitaker*, 105 Ohio App. 3d 46, 59, 663 N.E.2d 681 (1995) (applying an abuse of discretion standard to an executor's claim for reimbursement of certain expenses).

Again, under K.S.A. 59-1717, an executor is entitled to recover "his or her necessary expenses incurred in the execution of his or her trust." Part of that trust is the duty to marshall and take possession of decedent's tangible personal property. K.S.A. 59-1401. Decedent's domestic animals were not included in the executor's inventory and valuation. Nevertheless, we will assume, for the purposes of this opinion, that the domestic animals were estate property. As such, the purchase of dog and cat food was initially necessary for the management and preservation of those assets. Therefore, the district court's allowance of domestic animal food purchases through April 1999 was appropriate.

However, on April 8, 1999, the executor filed a petition for partial distribution and for authority to sell all estate property at a private auction. The petition alleged: "The sale of all of the property of the estate is necessary because said property is a wasting asset, the retention of which will be detrimental to the estate." The district court included that statement in its findings in the April

19, 1999, order authorizing the private auction. The private auction was conducted on April 30, 1999.

We are not presented with a challenge to the district court's "wasting asset" finding; we proceed on the basis that all estate assets were, in fact, wasting assets, the retention of which was detrimental to the estate. Faced with the district court's findings and armed with the court's sale authorization, John had a duty to the estate to proceed with reasonable dispatch to consummate the sales and stop the deterioration of estate assets.

John has not presented any credible justification for retaining the domestic animals or the automobile as estate assets, following the scheduled, authorized auction sale. Indeed, John personally bought the automobile at the auction. Therefore, the district court's disallowance of estate expenditures in connection with these assets, after the sale date, was a reasonable exercise of its discretion.

The evidence indicated the utility services provided to the farm were unnecessary for the management and preservation of estate assets. The district court found no justifiable reason to maintain utility services to the farm, following the auction sale date. When it became readily apparent that the transfer of assets would be delayed by protracted litigation, John had a duty to the estate to minimize asset deterioration by terminating unnecessary expenditures. Again, the district court did not abuse its discretion.

John personally paid certain estate expenses because, he contends, there was insufficient cash in the estate at the time the expenditures needed to be made. He characterized his advancements as a $7,757.30 loan to the estate, upon which he was entitled to receive $1,473.88 interest. John "reimbursed" himself $9,231.18 to pay the loan and interest. The district court allowed the reimbursement of the actual expenditures, but disallowed the interest reimbursement. John's claim for imputed interest on his expenditures is fundamentally flawed on multiple levels. John's claimed interest is 19 percent of the total advanced expenditures which were made in increments over a period of time; the interest claim appears to be unreasonably high. As the estate fiduciary, John should have obtained prior court approval to self-deal and person-

ally profit from the advancements. Further, K.S.A. 59-1703 provides that "where a fiduciary neglects or unreasonably delays to raise money by collecting debts or selling property," and the estate incurs unnecessary interest expense, the fiduciary is charged with the damage sustained by the estate. John neglected or refused to consummate the sales, at least with regard to returning Dennis' $14,500 cattle purchase check dated May 5,1999. The district court was compelled to deny John's claim of interest.

## ADDITIONAL COMPENSATION AND REIMBURSEMENT

We confess to being confused as to what appellant is presenting in this issue. The entire argument presented reads: "For the same reasons as stated above, based on K.S.A. 59-2249 and the *Foss* case, this Court should allow the additional compensation and reimbursement of the executor's fees for Mr. John Petesch for fulfilling his duties as executor of the estate of Lucy Petesch."

We would need to speculate as to what additional compensation and reimbursement John is claiming. Supreme Court Rule 6.02(e) (2002 Kan. Ct. R. Annot. 34) requires the appellant to include his or her arguments in his or her brief. See *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, 744, 822 P.2d 617 (1991). A point incidentally raised but not argued is deemed abandoned. *Campbell v. City of Leavenworth*, 28 Kan. App. 2d 120, 126, 13 P.3d 917 (2000), *rev. denied* 270 Kan. 897 (2001). We can proceed no further with this issue.

## ADDITIONAL ATTORNEY FEES AND COSTS

In arguing his last point, John again relies heavily upon our powers of deduction, if not clairvoyance. His brief cites us to Supreme Court Rule 7.07(b) (2002 Kan. Ct. R. Annot. 52): "Appellate courts may award attorney fees for services on appeal in any case in which the trial court had authority to award attorney fees." Then follows the one sentence argument: "Since the trial Court [*sic*] ordered the attorney's fees to be paid, this Court must allow the attorney's fees that have been incurred on appeal and a separate motion will follow."

John is apparently asserting that we must award attorney fees to an executor who appeals if the trial court awarded attorney fees to the executor for the estate administration. We disagree.

John has not filed this appeal for the benefit of the Lucy Petesch estate. If the appeal is successful, the estate assets available for distribution will be diminished and John will personally receive more money from the estate. Previously, our appellate courts have not directly considered whether an executor may recover attorney fees from the decedent's estate while advocating for the payment of the executor's compensation and expenses. Other jurisdictions have held adversely to John's position. "When litigation is carried on for the benefit of the administrator or executor personally, and not for the benefit of the estate, the costs should be paid by the administrator personally." *Edwards v. Lane*, 331 Ill. App. 442, 451-52, 163 N.E. 460 (1928); see *Matter of Kolouch*, 128 Idaho 186, 197-98 (Ct. App. 1996); *Succession of Hirt*, 612 So. 2d 1054 (La. App. 1993); *Oliver v. City of Larimore*, 540 N.W.2d 630, 635 (N.D. 1995). We adopt this rule for our state.

Affirmed.