NOT DESIGNATED FOR PUBLICATION

No. 119,296

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
DOROTHY A. DETERS.

MEMORANDUM OPINION

Appeal from Nemaha District Court; JOHN L. WEINGART, judge. Opinion filed May 3, 2019. Affirmed in part, reversed in part, and remanded with directions.

*William C. O'Keefe*, of O'Keefe Law Office, of Seneca, for appellants Thomas A. Deters and Vern L. Deters.

*Jason E. Brinegar* and *Coleman J. Younger*, of Galloway, Wiegers & Brinegar, P.A., of Marysville, for appellee Michael K. Schmitt.

Before STANDRIDGE, P.J., GARDNER, J., and WALKER, S.J.

PER CURIAM: Thomas A. Deters and Vern L. Deters (appellants) appeal several rulings made by the district court following the probate of the Last Will and Testament of their mother, Dorothy A. Deters. The appellants argue that the district court erred in interpreting a certain provision of the will in a way that resulted in the appellants receiving an unequal share of Dorothy's estate as compared to their siblings. The appellants also challenge the district court's approval of certain estate expenses and administrator and attorney fees.

1

Dorothy died testate on January 25, 2017. She was survived by nine children, all of whom were named as devisees in her Last Will and Testament, dated August 10, 2016. Dorothy's will provided, in relevant part:

"ARTICLE III

"I give, devise and bequeath all of the first ten percent (10%) of my estate, of whatever kind of property and wherever located in equal shares to the following 7 children:  Carl J. Deters, Kathleen J. Houser, Susan A. Huninghake, Geraldine A. Staley, Wayne E. Deters, Marvin L. Deters and Betty L. Deters. Should any of the above fail to survive me, then said share shall pass to his or her issue. Should any individual fail to survive me without leaving any issue, then such share shall lapse.

"ARTICLE IV

"I give, devise and bequeath all of the rest and residue of my estate (90%), of whatever kind of property and wherever located in equal shares to my 9 children:  Carl J. Deters, Kathleen J. Houser, Susan A. Huninghake, Thomas A. Deters, Geraldine A. Staley, Wayne E. Deters, Marvin L. Deters, Betty L. Deters and Vern L. Deters. Should any of the above fail to survive me, then said share shall pass to his or her issue. Should any individual fail to survive me without leaving any issue, then such share shall lapse.

"ARTICLE V

"In the event that any of the above named beneficiaries receive any cash, account balance or property as a result of joint ownership with me, a transfer on death designation or otherwise benefits from my death outside of this will, then such benefit shall be proportionately reduced from their right to take under this will. That is; the ultimate distribution of all of my assets shall be equal to all children whether taken under this will or some other mechanism."

The will named Geraldine A. Staley, one of Dorothy's daughters, as executor of her estate. On January 26, 2017, Geraldine filed a petition for probate of will and issuance of letters testamentary. The appellants—the only two children who were not

named as devisees under Article III of Dorothy's will—objected to the probate of the will and to Geraldine's appointment as executor. Specifically, the appellants alleged that Dorothy lacked capacity to execute the will and that Geraldine had exercised undue influence over Dorothy.

The parties appeared before a magistrate judge, where they presented witness testimony and exhibits. After reviewing this evidence and hearing argument from counsel, the judge admitted Dorothy's will to probate. But the judge declined to appoint Geraldine as executor of the will at that time, saying that she wanted to take the next 10 days to consider whether to appoint a special administrator to handle the estate.

Both parties appealed the magistrate's ruling to the district court, where an evidentiary hearing was held on the appellants' claims of lack of capacity and undue influence. The district court ultimately found the appellants failed to meet their burden to prove lack of capacity or undue influence; therefore, the district court admitted Dorothy's will to probate. Given the complicated nature of the estate and the large number of beneficiaries, the district court determined that an independent third party should administer the will instead of Geraldine. The court appointed Michael K. Schmitt to administer the estate and granted him letters testamentary.

The appellants moved to alter or amend the district court's judgment, alleging that Article III of Dorothy's will was ambiguous and that the provision resulted from Geraldine's undue influence. Given the appellants did not object to the entry of Dorothy's will to probate, the district court decided to take up the appellants' ambiguity argument at the hearing on final settlement of the will.

On January 4, 2018, Schmitt filed a petition for final settlement. In the petition, Schmitt requested that before authorizing distribution of the estate assets, the district court authorize a payment to Geraldine in the amount of $17,473.35 for expenditures

associated with "medical bills, recurring expenses and the funeral/burial of the decedent." Schmitt also requested payment of $30,997.10 for his administrative services as well as attorney fees and expenses in the amount of $32,727.84.

The appellants responded by opposing Schmitt's request for administrator and attorney fees and by requesting their own attorney fees for the time spent challenging Geraldine's potential appointment as executor. The appellants also filed a "Motion on Claims" arguing that Geraldine was not entitled to payment for her expenditures because she made the payments from an account she held in joint tenancy with Dorothy and because she never filed a claim against Dorothy's estate.

On February 8, 2018, the parties appeared at a hearing on final settlement, where the district court made several rulings. Relevant to this appeal, the court approved: (1) payment to Geraldine in the amount of $17,183.35 for "medical bills, recurring expenses and the funeral/burial of the decedent"; (2) Schmitt's requests for administrator fees in the amount of $30,997.10 and attorney fees and expenses in the amount of $32,727.84; and (3) the appellants' attorney fees in the amount of $1,500. After the parties argued their respective positions on the proper interpretation of the will, the district court continued the hearing to allow the appellants additional time to argue that an evidentiary hearing on that issue was warranted.

The appellants later filed the following documents with the district court:

- A motion to alter or amend the district court's ruling on grounds that Geraldine was not entitled to payment for her expenses because she did not timely file a claim with the estate.
- A motion titled "Respondents' Response to Ambiguity in the Will," arguing that Article III of the will conflicted with language in Article V, and that Dorothy had misunderstood the nature of the appellants' debt to her husband.

4

- A proffer of evidence in support of their ambiguity claim.

The parties appeared for final settlement on March 26, 2018. The district court amended its earlier ruling to approve payment of the appellants' attorney fees in the amount of $5,000 but otherwise denied in its entirety the appellants' motion to alter or amend. The court declined to hear additional evidence on the appellants' ambiguity claim, finding it involved a pure question of law. The court held the language in Article V did not eliminate, alter, or vitiate the terms of Article III. As a result, the court ordered Schmitt to distribute the assets of the estate pursuant to the terms of Dorothy's will.

ANALYSIS

The appellants raise three claims of error on appeal:  (1) The district court erred in interpreting the will, (2) the district court erred in approving payment to Geraldine for certain estate expenses, and (3) the district court erred in approving payment of the administrator and attorney fees. We address each of appellants' claims in turn.

1. *Interpretation of the will*

The appellants argue that the district court erred in interpreting Dorothy's will. Specifically, they contend that Article III, which did not name them as devisees of the first 10% of the estate, conflicts with Article V, which provided that "the ultimate distribution of all of [Dorothy's] assets shall be equal to all children." The appellants argue that this conflict must be resolved in their favor and request that Article III be effectively stricken from the will.

The interpretation and legal effect of a will are matters of law over which an appellate court exercises unlimited review. The primary function of a court when interpreting a will is to ascertain the testator's intent. If the testator's intent can be

5

ascertained from clear and unambiguous language in the will, the testator's intent must be carried out unless contrary to settled principles of law or public policy. If the testator's intent cannot be ascertained based on ambiguous language in the will that is indefinite or conflicting, the court must apply rules of construction to determine its effect. *In re Estate of Haneberg*, 270 Kan. 365, 371-72, 14 P.3d 1088 (2000). According to our Supreme Court:

> "The critical test in determining whether a will is ambiguous is whether the intention of the testator can be gathered from the four corners of the instrument itself. If so, ambiguity does not exist. If the testator's intent can be ascertained, neither rules of construction nor extrinsic evidence should be allowed to vary the clear intent expressed on the face of the instrument." 270 Kan. at 371.

Relying on the specific language in Article V stating that "the ultimate distribution of all of [Dorothy's] assets shall be equal to all children," the appellants assert that Dorothy clearly and unambiguously intended for all of her children to receive equally under the will. In support of this assertion, the appellants point out that other provisions in Dorothy's will specifically explain the reasons for certain deductions, yet Article III provides no such reasoning or explanation for the appellants' unequal treatment with respect to the first 10% of the estate. To that end, the appellants suggest that Geraldine unduly influenced Dorothy to believe incorrectly that the appellants were trying to steal her money or had received advance money from their father, which in turn caused Dorothy to treat the appellants unequally with respect to the first 10% of the estate.

But the appellants' interpretation of the will is contrary to the plain and unambiguous language in Article III, which clearly expresses Dorothy's intent that seven of her children, not including the appellants, inherit the first 10% of her estate. This intention is further supported by Article IV, where Dorothy devised "the rest and residue of [her] estate (90%)" to all nine of her children, including the appellants. By naming

6

each child individually in Article III and Article IV, Dorothy explicitly set forth how she wanted her estate to be divided.

Moreover, the meaning of a written instrument "'should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated provision.'" *In re Estate of Einsel*, 304 Kan. 567, 581, 374 P.3d 612 (2016). Rather than reading all the relevant provisions of the will together, as we are required to do, the appellants isolate the single provision in Article V stating that "the ultimate distribution of all of [Dorothy's] assets shall be equal to all children." But this provision is not meant to be read in isolation. Notably, the complete sentence begins with the phrase, "That is," which is a specific reference to the preceding sentence. Article V, read in its entirety, states:

> "In the event that any of the above named beneficiaries receive any cash, account balance or property as a result of a joint ownership with me, a transfer on death designation or otherwise benefits from my death outside of this will, then such benefit shall be proportionately reduced from their right to take under this will. That is; the ultimate distribution of all of my assets shall be equal to all children whether taken under this will or some other mechanism."

Article V explains the process by which joint tenancy or transfer on death property should be handled in determining the ultimate distribution of the estate. The second sentence does not constitute a general provision of the will. Rather, it is specific to Article V and is meant to clarify that a devisee's share of the estate should be reduced based on other benefits received outside the will in order to make each devisee's share—of the first 10% and/or the remaining 90%—of the estate equal. Contrary to the appellants' assertion, this language does not conflict with Article III.

Although set forth in their brief as a fourth claim of error, we find it appropriate to consider now the appellants' assertion that the district court erred in not allowing them to

7

present evidence relating to a check that Vern allegedly wrote to Dorothy a few months before her death. The appellants contend that this evidence was relevant to whether (a) undue influence or (b) a mistake of fact led to Dorothy's disparate treatment of them in her will. But the district court resolved these issues before admitting the will to probate. Indeed, the court specifically found that the appellants had not met their burden to prove lack of capacity or undue influence; as a result, the court admitted the will to probate. And the appellants readily conceded below that the evidence they sought to present at the final settlement hearing was available to them at the time the will was admitted to probate and that it did not otherwise constitute newly discovered evidence. The district court properly refused to consider the appellants' evidence when interpreting the will. See *In re Estate of Haneberg*, 270 Kan. at 371 (extrinsic evidence not allowed to vary clear intent expressed on face of written instrument).

In sum, the plain language of Dorothy's will clearly expressed her intent that the appellants be excluded as beneficiaries from the first 10% of her estate. Dorothy's reason for reducing the appellants' share is simply irrelevant. The district court did not err in interpreting Dorothy's will.

2. *Estate expenses*

The appellants argue that the district court erred by approving Schmitt's request for payment of Geraldine's expenditures associated with Dorothy's funeral expenses and other bills. The appellants suggest that Geraldine was not entitled to reimbursement for these expenses because she did not timely file a claim against the estate.

To the extent that resolution of this issue involves statutory interpretation, this is a question of law over which appellate courts have unlimited review. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

Under K.S.A. 59-1717, an administrator may recover all "necessary expenses incurred in the execution" of the estate. See *In re Estate of Bertrand*, 188 Kan. 531, 537, 363 P.2d 412 (1961). The phrase "necessary expenses" refers to those expenses that benefitted the estate and were reasonably necessary for its administration. *In re Estate of Petesch*, 31 Kan. App. 2d 241, 244, 62 P.3d 674 (2003).

In the petition for final settlement, Schmitt requested that before authorizing distribution of the estate assets, the district court first authorize reimbursement of certain expenses, including a payment to Geraldine in the amount of $17,473.35 for payments associated with "medical bills, recurring expenses and the funeral/burial of the decedent." Schmitt attached to the petition a list of Geraldine's itemized expenses and corresponding bank records. After the appellants objected to a $290 payment, the district court ultimately approved payment to Geraldine in the amount of $17,183.35.

The appellants do not dispute that Geraldine had the authority to make these payments or otherwise suggest that the expenses were not legitimate estate expenditures. Instead, they challenge the manner in which Geraldine requested payment. Rather than requesting payment through the administrator, the appellants contend that Geraldine was required to file a claim against the estate. Because Geraldine failed to do so within four months of publication notice to creditors, the appellants suggest that her request for payment is statutorily barred. See K.S.A. 59-2239 (setting forth statute of limitations for claims against deceased person's estate).

The appellants' argument is misplaced, however, because Geraldine's expenditures were made for the benefit of the estate. Although the district court ultimately declined to appoint Geraldine as executor, there is no question that Geraldine paid for certain expenses, including Dorothy's funeral, that normally would be paid by an executor or administrator. Thus, the expenses at issue were recoverable under K.S.A. 59-1717. As a result, Geraldine was not required to file a claim against the estate. Notably, the district

9

court approved a similar request for reimbursement on Vern's behalf ($600 for mowing Dorothy's real estate prior to its sale) despite Vern's failure to file a claim against the estate. The district court did not err in approving the payment to Geraldine.

3. *Administrator and attorney fees*

Finally, the appellants argue that the district court erred in granting Schmitt's request for administrator and attorney fees.

An administrator "has a duty to collect and preserve the assets of a decedent's estate and in so doing he [or she] may employ counsel to assist" in the estate's administration. *In re Estate of Murdock*, 213 Kan. 837, 852, 519 P.2d 108 (1974). Under K.S.A. 59-1717, an administrator may recover all "necessary expenses incurred in the execution" of the estate, including "compensation for services and those of his or her attorneys as shall be just and reasonable."

In Schmitt's petition for final settlement, he requested the following fees:

> "The Administrator CTA has performed services as Administrator CTA; he employed the firm Galloway, Wiegers & Brinegar, P.A. as attorney. The Administrator CTA and attorney have performed valuable services in this Estate and allowances should be made for their services and their expenses as follows:
> a.  To the Administrator CTA for services performed in the sum of $30,997.10;
> b.  To Galloway, Wiegers & Brinegar, P.A. for attorney fees in the sum of $30,997.10, and their expenses in the sum of $1,730.74 for a total of $32,727.84."

At the February 8 hearing, the parties acknowledged that the requested fees represented 3% of the inventory of Dorothy's estate. The appellants' counsel objected to the amount of the fees, arguing that they were too high and should instead be calculated based on an

10

hourly rate. Noting that 3% was a standard testamentary fee in Nemaha County, the district court approved the administrator's fee request as reasonable.

The appellants now reprise their argument that the administrator and attorney fee awards were unreasonable, claiming that the district court should have calculated the fees based on an hourly rate. For the first time on appeal, however, the appellants argue that (1) the district court should have allowed them to present evidence or question Schmitt and his counsel about the time actually spent working for the estate and (2) part of the attorney fee award should be billed to Geraldine because Schmitt hired the same law firm that represented Geraldine during the appellants' challenge to her appointment as executor.

We review the reasonableness of the district court's award for abuse of discretion. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 81, 350 P.3d 1071 (2015). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable, (2) is based on an error of law, or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). The district court itself is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in determining their value. An appellate court is also an expert on the reasonableness of attorney fees. However, an appellate court does not substitute its judgment for that of the district court on the amount of the attorney fee award unless in the interest of justice, the appellate court disagrees with the district court. *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940, 135 P.3d 1127 (2006).

"[T]he district court, in allowing an executor's claimed compensation and expenses, must find that the provided services and incurred expenses were reasonably necessary for the proper administration of the decedent's estate." *In re Estate of Petesch*, 31 Kan. App. 2d at 244-45. And in deciding the reasonableness of an attorney fee, the

eight factors set forth in Kansas Rule of Professional Conduct 1.5(a) should be considered. Those eight factors are:

"(1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3)  the fee customarily charged in the locality for similar legal services;

"(4)  the amount involved and the results obtained;

"(5)  the time limitations imposed by the client or by the circumstances;

"(6)  the nature and length of the professional relationship with the client;

"(7)  the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8)  whether the fee is fixed or contingent." KRPC 1.5(a) (2019 Kan. S. Ct. R. 300).

Here, the district court failed to make any specific findings related to whether Schmitt's claimed expenses for administrative compensation were reasonably necessary for the proper administration of Dorothy's estate. And the court addressed only one of the factors set forth in KRPC 1.5(a), finding that the traditional percentage fee in the county was dispositive of the issue as it related to both administrator and attorney fees. See KRPC 1.5(a)(3). Specifically, the judge stated, "Well, the 3 percent fee for the attorney, 3 percent for the estate is standard testamentary fee in Nemaha County, and it's been that way for the 45 years that I've been in business, so I'll approve the same, fees as reasonable."

Under KRPC 1.5(a), however, the customary fee in an area is only one factor to consider. Despite the appellants' request that the district court consider the time Schmitt and counsel spent working for the estate, there is no indication that the court did so. Neither Schmitt nor his counsel presented evidence of their work at the final settlement hearing, and there are no time records or other documentation included in the record on

appeal identifying any work done by Schmitt or counsel. "Fees which are not supported by 'meticulous, contemporaneous time records'" identifying the specific tasks being billed should not be awarded. *Davis v. Miller*, 269 Kan. 732, 748, 7 P.3d 1223 (2000). The district court's failure to properly consider all the factors in Rule 1.5(a) constitutes an error of law. Given this abuse of discretion, we must remand this case to the district court with directions to reconsider the reasonableness of the administrator and attorney fee request.

Affirmed in part, reversed in part, and remanded with directions.